Anderson, J.,
delivered the opinion of the court.
Charles H. Michie, by deed bearing date the 2d of February, 1859, conveyed certain lands to G-eorge H. Bramham, in the county of Louisa, for the considera^tion of $7,500, the receipt whereof is acknowledged on the face of the deed; and on the same day the said G-eorge II. Bramham conveyed the said lands to John B. Quarles in trust to secure the payment of three bonds, each for $2,500—one payable the 1st of May, 1859, one payable the 1st of May, 1860, and the other payable the 1st of May, 1861; the two last bearing interest from the 1st of May, 1859—which bonds were executed by the said Bramham to the said Michie for the purchase money of the said lands. Both deeds are witnessed by Charles Quarles, James M. Yest, and William J. Johnston.
On the 1st of October of the same year George H. Bramham and wife conveyed the same lands, by deed of that date, to said James M. Yest for the consideration of $7,500, the receipt whereof is acknowledged by the deed. The deed from Michie to Bramham, and the deed from Bramham to Yest, are both admitted to record on the same day—January 16, 1860— the former being proved by two of the' subscribing *151 witnesses, William J. Johnston and James M. Yest. The deed of trust has never been recorded. But some time after it was executed, and before Bramham sold to Yest, Michie removed to Missouri and carried it with him, but left the second and third bonds here in the hands of his attorney. The first bond has been wholly paid—and probably before he left—and the second bond, as admitted by the hill, up to the 22d of February, 1861, had been paid with the exception of $135 or $140, due as of that date. The third and last^ bond is wholly unpaid. And this hill was brought to enforce the deed of trust and subject the lands to sale to satisfy the balance due. The bill alleges that although the deed of trust was never registered, the subsequent purchaser had notice of its existence when he purchased from Bramham and paid him the purchase money, and that the lands in his hands are chargeable with the debt secured to him by said deed of trust; and he relies upon the fact of his having witnessed the deed, under the circumstances, as evidence that he had notice.
Whilst it is held that the fact of notice may he inferred from circumstances as well as proved by direct evidence, the proof must he such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of mala jides. 3 Gratt. 494, 545, Munday v. Vawter & als.; 2 Gratt. 280, 313, McClanachan & als. v. Siter, Price & Co., and 2 Johns. C. R., Day v. Dunham, 182. Professor Minor, in his admirable work, says the effect of the notice, which will charge a subsequent purchaser for valuable consideration, and exclude him from the protection of the registry law, is to attach to the subsequent purchaser the guilt of fraud. It is, therefore, never to be presumed, hut must be proved, and pi’oved clearly. A mere suspicion of notice, even though it he a strong *152 suspicion, will not suffice. 2 Min. Inst. 887, 2 edi., and cases cited.
The proof relied on in this case is that the appellant was a subscribing witness to the deed of trust under circumstances which, it is contended, show that he was apprised of the existence and contents of the deed of trust. Sugden says the better opinion is, that being a witness to the execution of a deed will .not of itself be notice; for a witness in .practice is not witness to the contents of the deed. 2 Sugd. Vend., bottom p. 1060, top 563. In Welford v. Beezley, 1 Ves. Sr. R. 7, Lord Chancellor Eldon said:. “ I do not think the bare attesting a deed as a witness will create such a presumption of his knowledge of the contents as to affect him with any fraud therein; for a witness is only to authenticate it, and not to be presumed privy to the contents.” Lord Kenyon held, in Harding v. Crethorn, 1 Esp. N. P. C. 56, that the mere, subscribing an instrument as a witness should not bind the party unless there was some evidence that he was acquainted with its contents at the time.
The only case I have found which holds a different doctrine is Mocatta v. Murgatroyd, reported in 1 P. Wms. 393; and the editor remarks that it has generally been disapproved of, and cites authorities to that effect. In Beckett v. Cordley, 1 Brown C. C. 353, the Lord Chancellor, referring to it, says: “ I do not view this as a case that I would .determine in the same manner ; for,” he remarks, “ a witness in practice is not privy to the contents of the deed.” If it were proved that all the witnesses were present together when they severally subscribed their names as attesting-witnesses; or ■that the parties talked over the subject-matter of the deeds in the presence of Mr. Vest; or that the deeds were written in his presence, and instructions given to the draughtsman in his presence and hearing; or that *153 the blanks were filled up by one of the subscribing witnesses in his presence, and he heard instructions given to Mr. Quarles, whose name he should insert as trustee; or was present when the instruction was given; it might be inferred therefrom that he was apprised of the character of the instrument he was called on to witness. But there is no such proof. It does not appear that the witnesses were togethei\when they signed. It does not appear that the deeds were written in the presence of Mr. Vest. The presumption is rather to the contrary: that .they were not written at the time they were executed, but had been written before, and blanks left to be filled when the parties met to execute them; nor does it appear that Mr. Vest was present when Mr. Quarles was requested to fill the blanks, and when he'filled them up. All we can say is that he may hav.e been present, and that the witnesses may have been together when they signed; but it is only conjecture. It may have been so, and it may not have been. . There is no proof as to the place or circumstances under which the deeds were executed and attested: whether it was at a public or private place; whether it was on a private or public occasion; whether the witnesses were convened at the place for the purpose; or whether they accidentally dropped in and were requested to witness the papers; whether Mr. Quarles had filled up the blanks and witnessed both papers before the other two witnesses came in— his name is first subscribed to both papers, whilst Johnston’s is subscribed before Vest’s to one, and after Vest’s to the other, as if both papers had been attested by Quarles, and Vest and Johnston were then called in, and one of them was handed to Vest with a request that he would witness it, which he- did, and then gave place to Johnston, and he subscribed his name, *154 and before he left his seat the other paper was handed to him to witness, which he did, and then gave place to Vest, who witnessed it also, or vice versa. This all might have been do'ne in two or three minutes of time, without a question being asked. The parties requesting their attestation, acknowledging it to be their act and deed as they handed the papers to them, respectively, for their attestation, and having performed what they were requested to do, the said Vest, or both of them, may have immediately left the room without a word being said as to the character of the instruments they had attested. It • is not pretended that there is' any proof that it did so occur. But it might have so occurred, and there is no proof that it did not; and it is not incompatible with the office of the witness, which, as- Lord Eldon said, is only to authenticate the instrument, and is not presumed to be privy to its contents. And it is not unusual in practice, for as Lord Kinyon said, a witness in practice is not privy to the contents of a deed.
Mr. Vest admits that the sale was talked of in the neighborhood, and he knew that Michie had sold his land to Bramham. But he does not say when he heard it. He knew it before he purchased from Bramham, some eight months after, for he saw the deed from Michie to Bramham, which vested in him an absolute and unencumbered title, and acknowledged the payment of the ’whole purchase-money. If he had known the character and contents of the' papers which he had witnessed on the 2d of February—that one of them was a deed conveying Michie’s lands to Bramham, and the other was a deed of trust from Bramham conveying the same lands to secure the payment of the purchase-money to Michie, he would have been likely to have remembered the execution of them. But if he had been just casually called in to witness two. papers, without know *155 ing what they were, whilst his mind was occupied with other matters, he might not have thought of it again. And when the deed was, eight or eleven months after-wards, when it Avas admitted to record, shown him, and when he recognized his signature as a subscribing Avitness, it might have recalled to his memory that he had witnessed the execution of the same paper, Avithout recalling to his mind that he had at the same time Avitnessed another paper; and if it did it would not inform him, or necessarily suggest to his mind, that the other paper Avitnessed by him was a deed of trust. And the presumption is that it did not, as he seems not to have felt any concern Avith the dealings between Michie and Bramham. He Avas probably aware that Bramham Avas still OAving Michie, if not at the time of his purchase, certainly prior to the 8tli of January, 1861, the date of Bramham’s letter to James Lasley, the agent of Charles Michie. And yet he gives himself no concern about the payments Avhich he had previously made to the said Bramham, or the large payment of $2,950, which he subsequently made to him on the 10th of December, 1861, whether the money was paid to Michie or not. He does not seem to regard himself as having anything to do Avith Michie, who had conveyed the land to Bramham Avhich he had purchased from him, as he avers in his answer, or concerned to see to the application of the money which he paid to Bramham; which he surely would have been vigilant to do if he had known that the said Michie had a deed of trust upon the land for which he was paying Bramham. If he had known that Michie held a subsisting deed of trust upon the land he had purchased for a debt Avhich Bramham was OAving him, his first concern would have been to have had that incumbrance removed, and would have claimed the right to have made the payments directly *156 to Michie, or his agent, or would at least have required that the money should he paid by Bramham to Michie, and the incumbrance on his land removed, neither of which he did.
From this fact a strong presumption arises that he had no notice or knowledge that Michie held a deed of trust upon his land. And he so ayers in his answer, and denies that he had any knowledge of the existence of the deed of trust when he purchased the land from Bramham, or before he had paid.the whole of the purchase-money, so far as he remembers or believes.
I am of opinion, therefore, that the proof which is. necessary to establish the fact of notice to the subsequent purchaser, all the authorities agree, must be so strong and clear as to affect his conscience and to justify the imputation to him of mala fides, this record does not exhibit against the appellant, and that he was a purchaser without a notice of the. prior incumbrance; and that the court below erred in decreeing the sale of his land to satisfy the debt due from Bramham to Michie, instead of dismissing the plaintiff’s bill as to him. And this conclusion is consonant with the equity of the case. It seems that Michie was informed at least as early as the 8th of January, 1861, through his agent (Lasley) that Vest had purchased the land from Bramham, yet he fails to have his deed of trust recorded, or to notify Vest of its existence, and that there is a balance of the purchase-money due him from Bramham for which he holds the land bound by virtue of his said deed of trust. For does he require his agent in this state, who held Bramham’s bonds, to notify Vest that he held them and looked t.o the land for payment;, and Vest avers in his answer that he was never notified by said agent and had no knowledge that he held said bonds. The inference would seem to he, from these facts, that it was understood between *157 Michie and Bramham that the deed of trust when it was executed should not go to record, and that it was a personal confidence reposed by Michie in his friend and relation, Bramham, and it is most equitable that he should now look to him for payment, and not to the land which Vest has fully paid for without notice or knowledge of his-prior incumbrance upon it. I am of opinion, therefore, to reverse the decree of the circuit court, and to dismiss the bill as to Vest with costs. • ....
The decree was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the decree of the circuit court is erroneous. It is therefore ordered and decreed that the same be reversed and annulled, and that the appellee, Charles H. Michie, pay to the appellant his costs expended in the prosecution of his' appeal here ; and this court proceeding to make such decree as ought to have been made by the court below, it is ordered and decreed that the plain tiff’s bill, as to the defendant, Janies M. Vest, be dismissed with costs; and the cause is remanded to the circuit court of Louisa county for such further proceedings as to the other defendants as may be right and proper.
Decree reversed.