## CARTER *v.* RUDDY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 250. Submitted March 30, 1897. — Decided April 19, 1897.

Generally a patent is necessary for transfer of the legal title to public lands.

It is well settled that an action of ejectment cannot be maintained in the courts of the United States on a merely equitable title; and there is nothing in this case to exempt it from the rule that a patent is necessary to convey legal title.

The verdict of a jury determines questions of fact at issue and this court cannot review such determination, or examine the testimony further than to see that there was sufficient to justify the conclusions reached.

If the trial court gives the law fully and accurately, covering all the ground necessary to advise the jury of the rights of the parties, it is not necessary to instruct them in the very language of counsel.

When a tract of land is held as a separate and distinct tract, with boundaries designated so that they may be known, the possession by the owner or his tenants of a part operates as a possession of all; but if the tract is cut up into distinct lots, marked and treated as distinct tracts, the claimant to all must show possession of all.

ON April 12, 1889, plaintiff in error commenced an action of ejectment in the District Court of Shoshone County, Territory of Idaho, to recover of defendants the possession of a portion of the north half of block 22 in the town of Wallace in said county and Territory, and damages for the detention thereof. After answers by the several defendants (Idaho having been admitted into the Union as a State), the case was, on application of the plaintiff, transferred to the Circuit Court of the United States for the District of Idaho. The petition for the transfer alleged two grounds: one, diverse citizenship, and the other, the existence of Federal questions, to wit, the construction of the act of Congress, of date July 17, 1854,

c. 83, authorizing the issue and location of Sioux half-breed scrip, 10 Stat. 304, the construction of sections 2387 to 2389, Revised Statutes, relating to town sites, and the question whether section 4556, Idaho Revised Statutes, 1887, is or is not inconsistent with the laws of Congress governing the possession and disposition of the public lands. A trial was had before a jury, commencing on December 4, 1891, which resulted in a verdict for the defendants. Upon this verdict judgment was entered in their favor, which judgment was affirmed by the Court of Appeals. 15 U. S. App. 129. Thereupon the case was brought here on error.

*Mr. W. B. Heyburn, Mr. Albert Allen* and *Mr. John R. McBride* for plaintiff in error.

*Mr. Edgar Wilson* for defendants in error.

MR. JUSTICE BREWER, after making the above statement, delivered the opinion of the court.

The first question arises on the plaintiff's claim of a legal title by virtue of a location of Sioux half-breed scrip. It appears that under the act of Congress a certificate, No. 430, Letter C, for 80 acres, was issued to Walter Bourke. This certificate, which was marked "not transferable or assignable," was dated November 24, 1856. On June 5, 1886, it was presented by W. R. Wallace at the local land office at Cœur d'Alene, accompanied by an irrevocable power of attorney to him executed by Walter Bourke and his wife, on February 27, 1883, and was located upon 80 acres, within which was the property in dispute. When the location papers were transmitted to the General Land Office at Washington it was discovered that Bourke had on October 26, 1870, applied to the department for a duplicate certificate, on a representation that the original had been lost or destroyed; that such application had been sustained and a duplicate certificate issued; that on March 9, 1880, he had located such duplicate on land in Dakota, and received a patent therefor. Upon the dis-

closure of these facts the Commissioner of the General Land Office cancelled this location in Idaho.

Now, the contention of plaintiff is that the location of this scrip operated to transfer the legal title to Bourke, by deed from whom the plaintiff claimed; that no patent was necessary, and that whatever of wrong Bourke may have committed, the legal title was in him and could only be divested by a suit in equity brought by the United States. This scrip is of the same character as that which was before this court in *Felix* v. *Patrick*, 145 U. S. 317. While it is true that the act of 1854 does not in terms provide for the issue of a patent, and simply authorizes the location of the scrip upon any public lands, yet the general rule is that a patent is necessary for the transfer of the legal title to public lands. In *Bagnell* v. *Broderick*, 13 Pet. 436, 450, it was said: "Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the Federal government, in reference to the public lands, declares the patent the superior and conclusive evidence of legal title; until its issuance the fee is in the Government; by the patent, it passes to the grantee, and he is entitled to recover the possession in ejectment." See also *Wilcox* v. *Jackson*, 13 Pet. 498, 516; *Langdon* v. *Sherwood*, 124 U. S. 74, 83, in which it was said: "It has been repeatedly decided by this court, that such certificates of the officers of the land department do not convey the legal title of the land to the holder of the certificate, but that they only evidence an equitable title, which may afterwards be perfected by the issue of a patent, and that in the courts of the United States such certificates are not sufficient to authorize a recovery in an action of ejectment." *Hussman* v. *Durham*, 165 U. S. 144.

It is true there are exceptions to this rule. One is specially provided by statute, Rev. Stat. § 2449, which makes a certification to a State equivalent to a patent as a conveyance of title. Again, as said in *Wilcox* v. *Jackson* (*supra*), "One class of cases to be excepted is, where an act of Congress grants land, as is sometimes done in words of present grant." This

exception was recognized in *Wisconsin Central Railroad* v. *Price County*, 133 U. S. 496; *St. Paul & Pacific Railroad* v. *Northern Pacific Railroad*, 139 U. S. 1; *Deseret Salt Company* v. *Tarpey*, 142 U. S. 241.

It is well settled that an action of ejectment cannot be maintained in the courts of the United States on a merely equitable title. See in addition to *Langdon* v. *Sherwood* (*supra*); *Johnson* v. *Christian*, 128 U. S. 374, 382, and cases cited.

With reference to the power of the Commissioner of the General Land Office to cancel an erroneous certificate of location issued by local land officers see *Cornelius* v. *Kessel*, 128 U. S. 456; *Knight* v. *U. S. Land Association*, 142 U. S. 161, 177; *Orchard* v. *Alexander*, 157 U. S. 372. It is, however, unnecessary to enter into any inquiry as to the power of the land department to issue duplicate in lieu of original scrip alleged to have been lost or destroyed, or even as to the regularity of the proceedings by which this certificate of location was cancelled. It is enough that there is nothing to exempt this case from the ordinary rule that a patent is necessary to convey the legal title; that the certificate of location created at best but an equitable title, and that such a title is not sufficient to sustain an action of ejectment in the Federal courts.

We pass, therefore, to the other question which arises on the contention of the plaintiff that he was in peaceable possession, holding under a claim of title, when the defendants forcibly dispossessed him, and that such prior possession under claim of title is sufficient to sustain this action against mere intruders. To an understanding of this question some further facts must be stated. In May, 1886, and before the certificate of location, one Trask, a surveyor, surveyed this tract of 80 acres and laid it off into lots and blocks. This was done at the instance of Wallace, who held the scrip and power of attorney from Bourke, and who was proposing to establish the town of Wallace. On this plat block 22 was laid off into 24 lots, 12 facing north and 12 south, with an alley between them. On July 31, 1886, Bourke, by his at-

torney Wallace, conveyed this block to plaintiff, the description in the deed being "block 22 (twenty-two) in said town of Wallace, consisting of twenty-four town lots, each of 25 × 100 ft., and bounded on the north by Lockey St., on the south by Bank St. and on the west by Sixth St., on the east by Seventh St., the title of said land having been vested in the party of the first part by location of half-breed Sioux scrip issued to the said Walter Bourke, under an act of Congress of July 17th, A.D. 1854, in exchange for lands held by said party of the first part at Lake Pepin, Minnesota, and now located and duly recorded in the U. S. land office with field-notes of survey as provided by said act of Congress, at Cœur d'Alene City, Idaho Territory."

At the time of the certificate of location and of the deed the 80-acre tract was covered with a dense growth of timber, and plaintiff, who put up a saw mill near by, proceeded, under contract with Wallace, to cut down the trees and convert them into lumber at his mill. In this way block 22 was substantially cleared of standing timber. Prior to February 19, 1889, plaintiff had built two houses on the north half of the block. These houses were on lots not in controversy in this action. There was no fencing around the block, or any part of it. Some board sidewalk had been placed by plaintiff in front of some of the lots and on one side of the block, but it was claimed by defendants that this was done in order to accommodate the travel passing between the depot and a hotel belonging to the plaintiff some little distance from the lots in controversy. There was a conflict in the testimony as to the condition of the block other than the lots upon which the houses were built, the defendants' testimony tending to show that it was covered over with stumps, fallen timber and brush. In May, 1888, proceedings were taken before the county commissioners of Shoshone County for the incorporation of the town of Wallace. On February 19, 1889, there was a general taking possession of vacant lots, done apparently with a view to the acquiring of title under the town site acts of Congress; and among other lots these in controversy were taken possession of and fenced by the several defendants. There was

other testimony bearing upon the question of the alleged possession by plaintiff, but enough has been stated to outline the nature of the dispute between the parties. Of course, the verdict of the jury determines the questions of fact adversely to the plaintiff, and it is not the province of this court to review such determination or to examine the testimony further than to see that there was sufficient. to justify the conclusions reached by the jury.

We pass, therefore, to consider the charge of the court and the instructions asked and refused. The plaintiff insists that he entered into possession by virtue of the deed of July 31, 1886; that his actual possession of two lots by virtue of the erection of houses thereon must be taken as constructive possession of the entire block, there being at the time no pretence of any adverse possession, and that, therefore, he was entitled to a peremptory instruction directing a verdict in his favor. He cites in support of the extent of his possession *Clarke* v. *Courtney*, 5 Pet. 319, 354, in which this court said: "Where a person enters into land under a deed or title, his possession is construed to be coextensive with his deed or title; and, although the deed or title may turn out to be defective or void, yet the true owner will be deemed disseized to the extent of the boundaries of such deed or title."

The court declined to give such peremptory instruction, but charged as follows:

"It is the law that where a party holds a tract of land as a separate and distinct tract and as one tract under a claim of title as the boundaries of the tract are so designated, described and marked that they may be known, his possession, either by himself or tenants, of a part of the tract operates as possession of all.

"If in this case you find that this half block was held by plaintiff as one tract or parcel of land, and that it was so marked out and designated in any way that defendants could know its location and plaintiff had possession of any part of it, such possession extended to and gave him possession of the entire tract; but if, on the contrary, it was cut up into separate and distinct lots and so marked upon the ground and was held

and treated as distinct tracts, then he must show the possession of all thereof."

\*       \*       \*       \*       \*

"11th. The next question is, what are the acts of ownership and possession to which your attention must be directed? As acts of ownership and possession the plaintiff claims he entered upon the premises in good faith in pursuance of his deed; that he thereupon proceeded to clear the land of its timber and to prepare it for occupation; that he put sidewalks along the sides of a portion of it; that he put them there as the owner of the ground for its convenient use and to improve and enhance its value; that as such owner and claimant he caused water to be conducted to some part of the premises; that he paid taxes on the premises, and that he has always, since purchasing the ground, claimed to own it, and has openly and publicly exercised control over it.

"If these assertions of plaintiff are true, and these acts were done by him or by his agents, you are instructed that they constituted in him such a possessory title to the premises in dispute as the Government will protect as against any other person claiming by a similar or subsequent possessory title.

"12th. On the contrary the defendants claim that the plaintiff's entry on the land was not in good faith to hold it; that his object was to cut therefrom for milling purposes the timber thereon; that he did not clear the land; that the sidewalks were not constructed for the benefit of the property, or because plaintiff owned it, but to benefit and add to the convenient use of other property he owned and business he was operating in that vicinity; that the water he had conducted there was not to benefit the premises, but was a part of the town system of water works, and that the plaintiff had, through himself or his agents, ceased to exercise control over the property, and that on the 19th day of February, 1889, it was vacant unoccupied lands of the United States, and that on such day they peaceably entered the premises.

"If you find the claim of the defendants to be true then their entry and possession was lawful."

It is not necessary for a court to give instructions in the very language of counsel. It is enough if it gives the law fully and accurately, and we think this charge not only stated the law accurately, but also covered all the ground which was necessary in order to fully advise the jury of the rights of the plaintiff. While his deed was of block 22 it describes the block as composed of 24 lots, and the plat upon which the deed was based shows that there was an alley running through the block and separating the 12 lots on the north from the 12 lots on the south. It was, therefore, not a single tract. Further, plaintiff, in his complaint, thus described the property for which he sued :

"Said half block being 300 feet long in an east and west, and 100 feet wide in a north and south direction (except two separate lots, pieces or parcels of land described on the plat of said town as lots twelve (12) and twenty (20) in said block twenty-two (22), each of said lots being 25 feet wide and 100 feet long)."

In respect to which the Court of Appeals, in its opinion, well said :

"It may be observed that plaintiff alleged that the lots which he claims to have been in possession of tenants were 'two separate lots, pieces and parcels of land' from the land sued for. Can their possession, therefore, be the possession of land from which they were 'separate'?"

We do not think it could have been properly held as matter of law that the plaintiff was in constructive possession of this entire half block, and the rule of law in respect to such constructive possession was in the charge we have quoted correctly stated. In this respect, it may not be inappropriate to notice two sections of the territorial statutes, 4040 and 4556, Idaho Rev. Stat. 1887, the first of which, referring to property held for five years under a claim of title founded upon a written instrument, declares that the property so included in such instrument is deemed to have been adversely held, "except that, when it consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract"; and the second provides that in an

action for the possession of "a lot or parcel of land, situated in any city, town or village on the public lands," the plaintiff is required to prove an actual enclosure of the whole lot, or the erection of a dwelling house or other substantial building on some part thereof, and adds that "proof of such building, with or without enclosure, is sufficient to hold such lot or parcel to the bounds thereof, as indicated by the plat of such city, town or village, if there be one, and if there be no such plat, then to hold the same, with its full width and extent from and including such building to the nearest adjacent street, where the intervening space has not been previously claimed by adverse possession."

As to the circumstances to be considered in determining the question of possession other than the instrument under which the title is claimed, we think the court, in paragraphs 11 and 12, heretofore quoted, stated the law in such a way as to give the plaintiff no ground of objection, and as upon these instructions the jury found the facts adversely to the plaintiff we must accept that finding as conclusive. We see no error in the record, and the judgment of the Court of Appeal is

*Affirmed.*