## Richmond.

VIRGINIA IRON, COAL & COKE CO. v. CRANE'S NEST COAL & COKE CO.

FEBRUARY 4, 1904.

Absent, Keith, P.

1. DEEDS—*Description of Premises.*—A conveyance of all the coal underlying the grantor's tract of land known as the "Sandy Ridge tract," adjoining the lands of certain named owners, though not a complete description, will convey the coal underlying the tract as it has been known for twenty years prior to the conveyance, although the grantor may have intended to except a portion of the tract the coal under which he had previously contracted to sell to another, and although the description would have been equally as accurate if the excepted land was not included. A grantor will not be allowed to change the effect of his conveyance by a statement that he did not intend to include this or that parcel of land therein when such intention was not made known to his grantee at the time and acquiesced in by him.

2. POSSESSION AS NOTICE—*Description of Premises—Character of Acts of Ownership.*—A purchaser for value and without notice of a tract of eleven hundred acres of land will not be chargeable with notice of the equitable claims of a third person growing out of an unrecorded contract accompanied by actual possession, where it appears that the contract describes no definite boundary, but calls for "a certain piece of land on Sandy Ridge, in Wise county, Virginia, say, about forty or fifty acres," out of a general boundary of upwards of a thousand acres, and he has not paid the purchase price, and the acts of ownership are not open, notorious and adverse, but are such as might well have been regarded as the acts of a tenant or lessee.

3. EJECTMENT—*Plaintiff's Title—Equitable Title—Estoppel.*—A plaintiff in ejectment must generally be equipped with the legal title, and cannot recover on an equitable title, nor rely on an equitable estoppel against the defendant.

Error to a judgment of the Circuit Court of Wise county, in an action of ejectment, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*D. D. Hull, Jr.,* and *Bullitt & Kelly,* for the plaintiff in error.

*J. Norment Powell,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is an action of ejectment, brought by the Crane's Nest Coal & Coke Company, defendant in error, against the Virginia Iron, Coal & Coke Company, plaintiff in error, to recover possession of the coal, with the right to mine the same, lying upon and under a parcel of 44 acres and 32 poles of land, situated in Wise county, Virginia.

At a trial of the cause, upon the plea of the general issue, all questions of law and fact were, by agreement of the parties, submitted for the determination of the judge of the Circuit Court, without a jury, upon an agreed statement of facts, the right of either party being reserved at the hearing to object and have the court pass upon the admissibility, as evidence, of any of the facts set out in the agreement, &c. The judgment of the Circuit Court was for the plaintiff, and the case is before us upon a writ of error awarded the defendant, plaintiff in error here.

Both the plaintiff in error and the defendant in error claim title to the coal in question from a common source—Samuel Horn. About the year 1855, Samuel Horn, under color and claim of title, entered into the possession of two parcels of land in the county of Wise, the legal title to which he afterwards acquired, which two parcels together constituted his "farm on Sandy Ridge," and which for more than twenty years prior to 1886 had been generally known and locally designated as "Samuel Horn's Sandy Ridge Tract." The coal in controversy lies upon and under one of these parcels of land, the title to which was conveyed to Samuel Horn by one G. W. Kilgore, as commissioner.

The deed from Horn to Greenway & Warner, trustees, under which plaintiff in error claims, was executed and delivered April 23, 1887, and recorded August 25, 1887, while the deed from Horn to Clayton Mead, under which the defendant in error claims, was executed and delivered May 21, 1887, and not recorded until April 19, 1889. The former deed was made pursuant to contract dated October 12, 1886, and the latter pursuant to contract dated April 6, 1886, neither of which contracts were recorded.

Mead's contract of April 6, 1886, is as follows:

"April the 6, 1886.

"Know all men by these presents, that I, Samuel Horne, sold this day to Clayton Mead a certain piece or tract of land, lying on Sandy Ridge, in Wise county, Va., say forty or fifty acres, more or less, for which I received of the said Mead a certain black mair, for which I am to give the said Mead forty acres of land, the remainder the said Mead is to pay me three dollars per acre, in young cattle; day and date above written.

"SAMUEL HORNE."

The deed from Horn to Mead, with covenant of special warranty, contains a description by courses and distances of 44 acres and 32 poles, taken from an *ex parte* survey caused to be made by Horn at some time between the date of his above contract with Mead, and the date of his deed to him of May 21, 1887.

By the contract of October 12, 1886, which was an "option and coal sale," obtained from Samuel Horn, through one G. W. Bond, to G. V. Litchfield, Horn agreed to grant, bargain and sell to Litchfield, his heirs and assigns, at the rate of fifty cents per acre, "all the coal lying and being upon and under my farms or tracts of land, containing twelve hundred and seven acres, and situated on Guest's river and Sandy Ridge, in the county of Wise and State of Virginia, being my land and adjoining the lands of one tract N. J. Horn, William Horn, and Samuel Counts; one tract D. S. Hoge, J. B. Miller, and Widow Gray; one tract N. R. Fuller, D. K. Banner, W. V. Kiser, Hop Richardson, H. G. Kiser, and I. B. Dunn, with the right of the said G. V. Litchfield, his heirs and assigns, of entry to mine the said coal with all the usual mining privileges, reserving to myself the fee simple of my said land, and the right to mine coal thereon for my own household use, but not for sale."

This contract included the coal on three parcels of land, being the Bruce tract, on Guest river, supposed to contain 107 acres, and the two tracts designated and generally known as "Samuel Horn's Sandy Ridge tract," aggregating a supposed area of 1,250 acres; but when, in pursuance of the contract, Horn and wife came to make the conveyance of April 23, 1887, to Greenway & Warner, trustees, it being found that he did not have the legal title to the Bruce tract of 107 acres, that tract was left out, and his conveyance with general warranty of title embraces "all the coal lying upon and under our farm, containing eleven hundred, more or less, acres, situated on north side of Guest's river and Sandy Ridge, on the waters of Big Tom's

Creek, and the waters of Caney Creek, in the county of Wise, State of Virginia, being my land, and adjoining the lands of, the first tract joins N. J. Horne, William Horne, Samuel Counts, W. H. Nash; the Sandy Ridge tract joins N. R. Fuller, D. K. Banner, W. V. Kiser, H. Richardson, H. G. Kiser, and I. B. Dunn, with the right of the said James C. Greenway and James C. Warner, trustees, their heirs and assigns, of entry to mine said coal with all the usual mining privileges; reserving to ourselves the fee simple of the surface of said farm, also all timbers and all other minerals. I have sold the coal only and nothing more," &c. The coal in question underlies the land last described as the "Sandy Ridge tract," adjoining N. R. Fuller and others named.

It is conceded that the contract between Samuel Horn and Clayton Mead of April 6, 1886, is void for uncertainty in the description of the land referred to, and it must also be conceded that if the deed from Samuel Horn to Greenway & Warner, trustees, of April 23, 1887, recorded August 25, 1887, was sufficient in description to include the coal upon and under the 44 acres and 32 poles of land claimed by Clayton Mead, the legal title thereto was no longer in Samuel Horn, and could not have been acquired by Mead by his deed of May 21, 1887, not recorded until April 19, 1889. A decision of the case must, therefore, turn upon whether or not the deed to Greenway and Warner, trustees, is sufficiently clear in the description of the premises conveyed to embrace the coal in question.

There is nothing whatever upon the face of the deed to indicate an intention on the part of Samuel Horn, the grantor, to exclude this coal from the operation and effect of the conveyance, while by its very terms, as we have seen, it conveys with general warranty of title all the coal lying upon and under the lands of the grantor known as the "Sandy Ridge Tract," adjoining N. R. Fuller, D. K. Banner, W. V. Kiser, H. Richardson, H. G. Kiser, and I. B. Dunn, with all the usual mining privi-

leges, reserving to the grantor only the fee simple of the surface of the land, and coal for home use. It is true that the description by adjoining owners is not a complete description of the entire lands upon and under which the grantor, Samuel Horn, conveys the coal, with the usual mining privileges to the grantees, Greenway & Warner, trustees, but from a plat of the "properties and leases on Sandy Ridge," verified by the signatures of counsel for the parties to this suit, made a part of the record, the description by adjoining landowners is all sufficient to include the 44 acres and 32 poles of land (the Mead land), under which lies the coal in question. This land adjoins, as the plat shows and as the deed states, the lands of H. Richardson and W. V. Kiser, and while, if it be excluded, the "Sandy Ridge tract" would still adjoin these parties, it is the more rational view, we think, that if it was not intended to convey the coal on the Mead land, he would have been named as an adjoining landowner as well as H. Richardson and W. V. Kiser. A grantor in a deed will not be allowed to change the effect of his conveyance by a statement that he did not intend to include this or that parcel of land in his conveyance, which intention on his part was not made known to his grantee at the time and acquiesced in by the latter. The conveyance in this case is of the coal upon and under the grantor's lands in Wise county, known generally at that time and for twenty years prior as his "Sandy Ridge tract," the boundaries of which, so far as necessary, embrace the coal upon and under the 44 acres and 32 poles of the "Sandy Ridge tract," which Clayton Mead claims to have purchased of the same grantor under a mere parol agreement. The evidence in the case sustains unmistakably this construction of the conveyance. 2 Devlin on Deeds, sec. 1012; 2 Minor's Insts., 1071.

The doctrine laid down in *Chapman* v. *Chapman*, 91 Va. 401, 21 S. E. 813, 50 Am. St. 846, cannot be invoked by the defendant in error, as the facts upon which the doctrine that

"actual, notorious, and exclusive possession of land takes the place of the recordation of the instrument of title," was rested in that case upon a very different state of facts from the case here. There the possession was actual, notorious, exclusive, unambiguous, and unequivocal, of a definite tract of land. The equitable owner, though he had received no deed, had paid all the purchase money, and been in the possession of a definite tract of land for more than fifteen years, and the trustees who claimed to be *bona fide* purchasers for value without notice, knew of said possession, and one of them had knowledge of the interest that the party in possession had in the land. Here Mead had not paid all his purchase money. He had purchased no definite boundary, his contract calling for "a certain piece of land lying on Sandy Ridge, in Wise county, Virginia, say forty or fifty acres," out of a boundary generally known as the "Samuel Horn's Sandy Ridge farm" of a thousand acres or more. The general location of the land referred to in their agreement may have been understood between Horn and Mead, but the acreage and boundary lines thereof had not been determined. The *ex parte* survey, heretofore referred to, which Horn had made in 1886, was not accepted by Mead, so far as the record shows, until his deed of May 21, 1887, was taken, and there is not the slightest proof that Greenway & Warner, trustees, or G. V. Litchfield, or G. W. Bond, who obtained the contract from Samuel Horn of October 12, 1886, had knowledge of Mead's purchase or possession of any part of Horn's "Sandy Ridge land." Nor does it appear that either of these parties had such knowledge when the deed from Samuel Horn to Greenway & Warner, trustees, of April 23, 1887, was executed and delivered; nor does it appear that Mead's possession was in any sense notorious, but rather the contrary, as G. W. Bond and W. A. Carico, who for years had lived within two and one-half or three miles of Mead, had never heard of it. Prior to Mead's contract from Horn, he lived on the H. Richardson tract, near

the dividing line between Richardson and Horn, and the only acts of ownership done by Mead are these: During the spring or early summer of 1886 he cleared about one acre on the Horn land, within twenty-five yards of the cabin in which he lived on the adjoining land of H. Richardson, at a point that years before had been cleared, but which had again grown up in brush and timber, some of the trees on it being as much as a foot in diameter. In July or August of 1886, he planted turnips on about one-half of the land thus cleared, and between the 1st and 15th of July of the same year he rented the remainder, about one-half acre, to Franklin Horn (son of Samuel Horn), who planted millet, under a verbal agreement that Mead was to have one-third of the crop as rent for the land, but as the crop failed, Mead received no rent. Some brush from this clearing was put around the cleared ground for the purpose of enclosing it, and made an indifferent fence. Prior to September 22, 1886, Mead made a further clearing on the Horn boundary for a house site, and prior to that date felled on or near the site some house logs or timber for building a cabin, which logs or timber remained where felled till Mead's one-room log cabin was built, the building of which did not begin till after October 12, 1886, and was not nearly enough completed for him to move into until the early summer of 1887, subsequent to the deed from Horn to Greenway & Warner, trustees, of April 23, 1887.

It is agreed that W. V. Kiser, who lived on adjoining land, had the impression from the clearing of this house site and the felled timber near the same, independently of any other information, that some one intended to put up a log structure of some kind at that place, and he had been told by Mead, in advance, of the purpose for which the timber was being felled, but if the agreed statement as to what Kiser would have stated had he been formally examined as a witness be given the broadest interpretation, it would not warrant the conclusion that the acts of Mead upon the land were to be considered as acts of owner-

ship, since they could as well have been regarded as the acts of a tenant or lessee of the land.

If it were conceded that it was competent for Samuel Horn to testify as to how he arrived at the acreage called for in his deed to Greenway & Warner, trustees, and that he deducted from the acreage called for in his title papers 43 acres, as being the acreage of the boundary he had theretofore sold to Mead, the statement would be entitled to no weight in this controversy, as Horn knew at the time that the Mead land contained 44 acres and 32 poles by his *ex parte* survey, which he carefully kept from the knowledge of Bond when he contracted with him to convey all the coal on his "Sandy Ridge tract" to Litchfield or his assigns, and also kept from Greenway & Warner, trustees, knowledge of his sale to Meade when he made the deed to them pursuant to his contract with Litchfield. He admits that he has no recollection of telling Litchfield about the deduction of the acreage of the Mead land, and the agreed facts are conclusive that no mention of this was made when the deed to Greenway & Warner, trustees, was executed and delivered. Mead admits that at the time he took his deed he had heard that Horn had sold his coal under his "Sandy Ridge lands" to the interest represented by G. W. Bond, but did not know the names in which the contract and deed were taken, or that it was claimed that the deed included all coal under the tract he himself had purchased. Considered in connection with this admission of Mead, and the further fact that he took a deed from Horn with only a covenant of special warranty, it is quite significant that when Mead came to convey the coal on the land claimed by him to Ross, trustee, through whom defendant in error claims, he also conveyed with only the covenant of special warranty.

We have gone thus into a consideration of the material facts in the case, not in recognition of the doctrine contended for, that a plaintiff in an action of ejectment may recover upon an equitable title, or on an equitable estoppel against the defend-

ant, but to show that if the doctrine prevailed in this State, the evidence of the delivery of the possession to Mead of the land upon and under which the coal in question lies, and of his acts of ownership thereon is not sufficient to entitle defendant in error to recover in this action, since it could not be deemed sufficient to induce a court of equity to decree specific performance, which is the test in those jurisdictions in which the doctrine is recognized. Whatever may be the rights of the defendant in error as the successor in title to any rights Clayton Mead may have had under his contract with Samuel Horn, as to which we express no opinion, it cannot recover in this action without the legal title to the coal in question. In a large number, if not the majority, of the States of the Union, and in all of them where not changed by statute the rule, subject to a few exceptions, is that a plaintiff cannot recover in ejectment without the legal title. The principal exception to this general rule is where the plaintiff is in the possession of the land, from which he is ousted, under circumstances from which the jury may infer a conveyance of the legal title.

In a note to *Carter* v. *Ruddy* (166 U. S. 493, 41 L. Ed. 1090), 4 Am. & Eng. Dec. Eq. 161, it is said: "The action of ejectment being purely a common law remedy, and ejectment on an equitable title being a mere substitute for a bill of specific performance, therefore governed by equitable principles, it follows that in such an action the legal title must prevail, wherever the incidents of the action remain as at common law; and consequently no recovery can be had in an action of ejectment on a purely equitable title, without express statutory authority, in those States in which the common law and equity systems of jurisprudence are kept distinct." . . . .

Among the numerous authorities cited in the note are *Suttle* v. *R., F. & P. R. R. Co.,* 76 Va. 284; *Nelson* v. *Triplett,* 81 Va. 236, and *Jennings* v. *Gravely,* 92 Va. 377, 23 S. E. 763. See, also, *Russell* v. *Allmond,* 92 Va. 484, 23 S. E. 895.

The opinion in *Carter* v. *Ruddy, supra,* citing *Langford* v. *Sherwood,* 124 U. S. 74, 8 Sup. Ct. 429, 31 L. Ed. 344, and *Johnson* v. *Christian,* 128 U. S. 374, 9 Sup. Ct. 87, 32 L. Ed. 412, says: "It is well settled that an action of ejectment cannot be maintained in the courts of the United States on a merely equitable title."

In *Jennings* v. *Gravely, supra,* Keith, P., reviews section 2741 and other sections of the Code, as well as the decisions by this court on the subject, and says: "The plaintiff may come into court upon an absolutely perfect equitable title, but will lose his case if the defendant can show an outstanding legal title in himself or a stranger, except in a few cases dependent upon certain technical principles."

In that case the defendant sought to set up, under section 2741 of the Code, an equitable title in defence to the right of the plaintiffs, shown to be the holders of the legal title to the land in question. And in *Suttle* v. *R., F. & P. R. R. Co., supra,* the plaintiff came into a court of law, in an action of ejectment, basing his right of recovery upon an equitable estoppel, and lost his case because he was unable to show a legal title in himself, and a present right of possession under it at the time of the commencement of the action. In *Jennings* v. *Gravely, supra,* the opinion further points out clearly that the enactment of the statute, now section 2741 of the Code, was dictated not by a general, but by a restrictive policy, and could not be availed of, even by a defendant in an action of ejectment in but a few classes of cases, which were selected and confined within narrow limits by careful and cautious provisions, and quotes from the opinion of Staples, J., in *Suttle* v. *R., F. & P. R. R. Co., supra,* as follows: "The provisions of the statute . . . . require that there shall be written evidence of the contract; that the vendee shall have fully complied with all of its terms, so that he would be entitled to the conveyance of the legal title without any condition imposed." . . . . "If, as now

claimed, the holder of an equitable title may maintain or defend in ejectment; if a party in that action may rely upon a mere equitable estoppel in *pais,* the statutes cited are altogether unnecessary, and this court has utterly misapprehended the grounds upon which they were enacted."

We are of opinion that all evidence considered by the lower court relative to an alleged superior equity in the defendant in error, as the successor of Clayton Mead in title to the coal in question, was irrelevant, and should have been excluded, and that, upon the relevant testimony contained in the agreed statement of facts and the exhibits therewith, the case is clearly with the plaintiff in error. The judgment of the Circuit Court will, therefore, be reversed and annulled, and this court will enter such judgment as that court should have entered.

*Reversed.*