# Richmond.

## CRANES NEST COAL AND COKE CO. v. VIRGINIA IRON, COAL AND COKE CO. AND OTHERS.

November 19, 1908.

December 3, 1908.

Absent, Buchanan, J.

1. PURCHASER FOR VALUE—*Notice—Burden of Proof—Degree of Proof.*—
The burden of proving notice to a purchaser for value is on the party alleging it, and while the fact of notice may be inferred from circumstances, as well as proved by direct evidence, yet the proof must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of bad faith.   In the case in judgment, the evidence fails to establish notice, actual or constructive.

2. SPECIFIC PERFORMANCE—*Sale of Land—Verbal Contract—Part Performance—Proof Required—Case in Judgment.*—In order for a purchaser to have specific performance of a verbal contract for the sale of land which has been partly performed by him, the contract must be clear, definite and unequivocal in all its terms, and established by clear and satisfactory evidence; and the acts of part performance must refer to, result from or be made in pursuance of the agreement proved.   Furthermore, the agreement must have been so far executed that a refusal of full execution by the vendor would operate as a fraud on the purchaser and place him in a situation which does not lie in compensation.   In this case the acts of part performance relied on by the purchaser do not measure up to these requirements.

3. SPECIFIC PERFORMANCE—*Damages—Inadequate Compensation—Indemnity.*—Where a party has been induced by verbal agreement to change his condition in life, to expend considerable sums of money, and to do acts whose value cannot be measured in money and compensated in damages, equity should protect him by a specific execution of the contract; but the tendency of all modern cases is to

prefer giving the party compensation in damages, instead of a specific performance, and wherever damages will answer the purpose of indemnity, this alternative will be preferred.

Appeal from a decree of the Circuit Court of Wise county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Ayers & Fulton, J. Norment Powell* and *Bond & Bruce,* for the appellant.

*D. D. Hull, Jr., Vicars & Peery* and *Bullitt & Kelly,* for the appellees.

KEITH, P., delivered the opinion of the court.

The Cranes Nest Coal and Coke Company filed its bill in the Circuit Court of Wise county against the Virginia Iron, Coal and Coke Company, the Manhattan Trust Company, trustee, and the New York Trust Company, trustee, praying that the Virginia Iron, Coal and Coke Company be restrained from mining, removing, and selling the coal under a tract of land sold by Samuel Horn to Clayton Meade. A preliminary injunction was granted. The defendants answered the bill, proof was taken, and a decree entered dismissing the bill, from which decree an appeal was allowed by this court.

The case made by the plaintiff in its bill is as follows: That one Samuel Horn, on April 6, 1886, being the owner of a tract of land, made a written contract with one Clayton Meade to sell to him a parcel of the land on Sandy Ridge in Wise county. The tract was believed to contain about forty acres, and Meade delivered to Horn a black mare in payment for forty acres; and agreed to pay three dollars per acre for the remainder of the tract when the area was ascertained, and Horn executed to Meade a receipt to that effect. The land was then uncleared

and in a state of nature; but Horn at once delivered possession, and Meade, in the spring, summer and autumn of 1886, exercised various acts of ownership upon it—built a small dwelling house, and cleared, fenced and cultivated a small portion of it. On September 22, 1886, Horn and Meade went upon the land with a surveyor, and a survey was made, the corners marked, and the area ascertained to be 44 acres, 32 poles. On May 21, 1887, Meade paid to Horn the balance due on the land, and received a conveyance from Horn. This deed was recorded April 15, 1889. The bill claims that Meade's possession has continued ever since, and his title never questioned in any way except by the defendants in this suit.

In March, 1888, Meade conveyed the coal under the land to Ross, trustee, from whom by various deeds, each for a valuable consideration and without notice to the grantee of any adverse claim, it passed to the complainant, the Cranes Nest Coal and Coke Company.

The answer of the Virginia Iron, Coal and Coke Company avers, that on October 12, 1886, Horn entered into a contract to sell to one G. V. Litchfield, at fifty cents per acre, the coal under three farms or tracts of land owned by him; that on April 23, 1887, in pursuance of said contract, Samuel Horn and wife executed to Greenway and Warner, trustees, a deed conveying the coal upon two tracts of land, as shown by deed; and respondent then deduces its title through Greenway and Warner, denies all notice, actual or constructive, of any claim or right on the part of the plaintiff or those under whom it claims to the land, avers that for a period of more than ten years prior to the institution of the suit, it was in the open, actual, exclusive, notorious and peaceable possession of the coal, as conveyed by Samuel Horn to Greenway and Warner, and that it thereby acquired an indefeasible title to the coal in dispute. The answer further states that, at the April term, 1903, of the Circuit Court of Wise county, the Cranes Nest Coal and Coke Company filed its declaration in ejectment

against respondent, to try the title to and right of possession of the same tract of coal, and mining rights and privileges mentioned in the bill of complaint; that to this declaration respondent had appeared and pleaded not guilty; that trial was had upon the issues joined, and upon said trial, by agreement of counsel, an agreed statement of the facts in writing was filed, and all questions of law and of fact were submitted to the court; that on the 14th day of August, 1903, a judgment was rendered by the Circuit Court of Wise county that the Cranes Nest Coal and Coke Company recover against respondent the coal and mining rights and privileges in the declaration mentioned, in fee-simple; and that upon a writ of error obtained from this court an order was entered on the 4th day of February, 1904, reversing and annulling the judgment of the circuit court, and judgment was given that the Cranes Nest Coal and Coke Company take nothing by its declaration and go hence without day.

The ejectment suit referred to is reported in the name of *Virginia Iron, Coal & Coke Co.* v. *Cranes Nest Co.*, 102 Va. at p. 405, 46 S. E. 393.

Without undertaking to decide that the judgment in that case is a bar to this litigation, the undisputed fact remains, that many of the questions which now arise were then considered and disposed of, and the opinion then delivered upon the facts then in evidence is strongly persuasive, as to the proper disposition of the questions now to be considered.

It was there held that the contract between Samuel Horn and Clayton Meade, of April 6, 1886 (which was as follows: "Know all men by these presents, that I, Samuel Horne, sold this day to Clayton Mead a certain piece or tract of land, lying on Sandy Ridge, in Wise county, Va., say forty or fifty acres, more or less, for which I received of the said Meade a certain black mair, for which I am to give the said Meade forty acres of land, the remainder the said Mead is to pay me three dollars per acre, in young cattle; day and date above written),"

was void for uncertainty in the description of the land referred to. It was there held, that if the deed from Samuel Horn to Greenway and Warner, trustees, of April 23, 1887, recorded August 25, 1887, was sufficient in description to include the coal upon and under the forty-four acres and thirty-two poles of land claimed by Clayton Mead, that the legal title thereto was no longer in Samuel Horn, and could not have been acquired by Meade by his deed of May 21, 1887, not recorded until April 19, 1889; and a decision of that case was, therefore, held to turn upon whether or not the deed to Greenway and Warner, trustees, was sufficiently clear in the description of the premises conveyed to embrace the coal in question, and after a full discussion of the terms of the deed, it was held, that the description was sufficient to embrace the coal in dispute.

All the facts bearing upon Meade's possession of the disputed land are there considered—that he had cleared a small parcel of the land, upon which he had sowed turnip seed, built upon it a small house, rented a portion of it to Franklin Horn who sowed millet upon it under a verbal agreement to pay one-third of the crop as rent for the land; that around this clearing a part of the brush was arranged so as to enclose it with an indifferent fence; that the "dwelling-house" was a one-room log cabin, which was not begun until after October 12, 1886, and into which Meade did not move until the summer of 1887, subsequent to the deed from Horn to Greenway and Warner, trustees. These acts of ownership are compared with the proof in *Chapman* v. *Chapman*, 91 Va. 401, 21 S. E. 813, 50 Am. St. Rep. 846, relied upon by appellant, and the court came to the conclusion (at p. 411, *Va. Iron, &c. Co.* v. *Cranes Nest Co., supra*) that *Chapman* v. *Chapman, supra,* which holds that actual, notorious and exclusive possession of land takes the place of the recordation of the instrument of title, presented a very different state of facts from the case then under consideration. In other words, that the several acts of ownership shown in evidence with respect to the land purchased by Meade from

Horn did not establish that actual, notorious and exclusive possession referred to in *Chapman* v. *Chapman.*

The petition claims that the bill stated four grounds for relief: (1) That the land in controversy was included in the contract from Horn to Litchfield and the deed from Horn to Greenway and Warner, by mutual mistake, contrary to the intention of all parties (or else by mistake of one and fraud of the other), from which equity will give relief against subsequent alienees with notice; (2) that Litchfield and Greenway and Warner, and all of their alienees including the defendants, had both actual knowledge and constructive notice of the prior contract rights of Meade, and same will be enforced against the defendants; (3) that if the defendants are correct in their position that the written contract between Horn and Meade is void because of uncerainty of description, then a parol contract existed between Horn and Meade which was rendered valid and enforceable by acts of part performance, and as the law was prior to May 1, 1888, was good even against purchasers for value without notice, and will now be enforced against purchasers of the right, title and interest of Greenway and Warner; and (4) that the contract from Horn to Litchfield and the deed from Horn to Greenway and Warner are void as to innocent purchasers under Meade (in which class the complainant and its vendees come), because (a) they were not recorded until after Horn conveyed to Meade, and (b) the description is not such as to give notice to third persons.

We have been unable to discover any evidence of mutual mistake, and the first three grounds above stated rest, in their last analysis, upon the proposition that the Virginia Iron, Coal and Coke Company, and those under whom it claims, acquired title to the property in dispute with notice, either actual or constructive, of the superior rights of the Cranes Nest Coal and Coke Company and those under whom it claims. We have seen that in *Va. Iron, &c. Co.* v. *Cranes Nest Co., supra,* the court considered and disposed of the question of notice, so far as it is

claimed to have been established by possession and acts of ownership upon the part of Meade. We have, then, to consider, whether or not there is proof of actual notice.

In the contract entered into between Samuel Horn and G. V. Litchfield, of date October 12, 1886, Horn agreed to sell at fifty cents per acre 1,207 acres of land described in the contract, for which there was paid at that time in cash $60.35, and the balance of $543.35 was to be paid in two equal payments of six and twelve months from that date. The acreage in this contract was compiled by Horn from his title papers, and consisted of several tracts, comprising a total of 1,250 acres, from which he deducted forty-three acres as being the property he had theretofore sold to Clayton Meade, leaving 1,207 acres, as set forth in the option contract of October 12. When Horn came to execute the deed of the 23rd of April, 1887, 107 acres, known as the Bruce tract, were deducted on account of some defect of title, but this tract was afterwards conveyed on the 29th of April, 1890; so that the deed of April 23, 1887, only conveyed 1,100 acres.

It is claimed that as a result of what occurred in ascertaining the acreage at the time of the execution of the contracts and deeds under which the Virginia Iron, Coal and Coke Company claims, Litchfield or his agents were informed that a certain acreage was deducted as being the tract of land sold to Clayton Meade. In other words, that Horn's title papers called for 1,250 acres, from which there was deducted forty-three acres, representing the land which he had contracted to sell to Clayton Meade, leaving 1,207 acres, and deducting the 107 acres representing the Bruce tract left the 1,100 acres for which the deed was executed.

In the action of ejectment brought by the Cranes Nest Coal and Coke Company against the Virginia Iron, Coal and Coke Company, it was admitted that G. W. Bond, who was the agent of G. V. Litchfield, did not on the 12th of October, 1886, the date of the option contract, on April 23, 1887, the date of the

deed to Litchfield, or at any other time, have any knowledge of the method by which the acreage conveyed had been compiled, and that Samuel Horn gave him no information on the subject. It is admitted that Litchfield had no such knowledge or information prior to April 23, 1887; and as to whether or not Litchfield or his agent were informed on April 23, 1887, that a certain acreage was being left off, being a tract of land sold to Clayton Meade, is said in the facts agreed to be a matter of controversy between the plaintiff and the defendant; " * * * and it is agreed that the evidence of all the witnesses upon this point may be stated, to be considered by the court in connection with the other facts and papers exhibited herewith. In so far as known, Samuel Horn, G. V. Litchfield, Geo. A. Kent, T. G. Wells, and W. A. Carrico, were the only persons who had any information upon the subject." The agreed statement then proceeds to summarize the testimony of these witnesses. We shall not follow that summary in detail. Suffice it to say, that while it shows knowledge upon the part of the witnesses of the deduction of the Bruce tract of 107 acres, it wholly fails to prove any knowledge upon the part of those concerned with respect to the forty-three acres which Horn had contracted to sell to Meade.

We are of opinion, therefore, that the evidence fails to establish notice, either actual or constructive. *Va. Iron, &c. Co. v. Cranes Nest Co., supra.*

The burden of proving notice to a purchaser for value is on the party alleging it, and while the fact of notice may be inferred from circumstances, as well as proved by direct evidence, "yet the proof must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of *mala fides.*" *Arbuckle* v. *Gates,* 95 Va. 802, 30 S. E. 496; *Vest* v. *Michie,* 31 Gratt. 149, 31 Am. Rep. 722.

"The possession and use of lands by a person other than the grantor must, in order to afford notice, be open, notorious and exclusive; it must be unambiguous and unequivocal; it must be

under claim of right; in short, like other matter from which constructive notice is sought to be imputed, it must be of such character as will excite inquiry upon the part of a purchaser, and will lead him in the exercise of due diligence to knowledge of the adverse rights in question." 23 Amer. & Eng. Enc. Law, 505.

The verbal contract under which Meade claimed from Horn had not been so far performed as to entitle him to have it specifically performed by a court of equity. Such a contract must be clear, definite, and unequivocal in all its terms, and established by clear and satisfactory proof; and the acts of part performance must refer to, result from, or be made in pursuance of the agreement proved. Furthermore, the agreement must have been so far executed that a refusal of full execution would operate as a fraud on the other party and place him in a situation which does not lie in compensation. *Wright* v. *Puckett,* 22 Gratt. 374; *Henley* v. *Cottrell,* 101 Va. 70, 43 S. E. 191; *Plunkett* v. *Bryant,* 101 Va. 814, 45 S. E. 742.

All the acts of part performance relied upon are susceptible of adequate compensation in damages. Where a party has been induced by a verbal agreement to change his condition in life, to expend considerable sums of money, and to do acts whose value cannot be measured in money and compensated for in damages, equity should protect him by a specific execution of the contract. But the facts under review do not establish such a case. As was said by this court, in *Wright* v. *Puckett, supra,* "The tendency of all the modern cases, both in England and in this country, is to prefer giving the party compensation in damages, instead of a specific performance. Wherever damages will answer the purpose of indemnity, this alternative will be preferred, as it will equally satisfy justice, and will be coincident with the provisions and in support of the authority of the statute."

We are of opinion that there is no error in the decree of the circuit court, which is affirmed.

*Upon a Petition to Rehear.*

December 3, 1908.

BY THE COURT:

There are two points made in the petition for rehearing, which require an answer:

First: That the court did not consider all of the evidence in the record before it, but based its opinion upon the agreed facts in the ejectment suit, which appear as an exhibit in this record.

This is an error. All the evidence was considered. It is true the opinion refers especially to the agreed facts, because the evidence is there stated in a more convenient and accessible form, and that statement of facts in truth contains in great part the evidence upon which the controversy must turn. The whole record, however, was considered by the court.

The second point is, that the opinion sets out the four grounds upon which the appellant claims that the decree ought to be reversed, but fails to pass upon the fourth ground, which is, that "the contract from Horn to Litchfield and the deed from Horn to Greenway and Warner are void as to innocent purchasers under Meade (in which class the complainant and its vendors came) because (a) they were not recorded until after Horn conveyed to Meade, and (b) the description is not such as to give notice to third persons."

It is true that the opinion does not in terms traverse this position, but its whole scope and effect from its statement of facts to its conclusion controvert and reject the appellant's claim upon this point.

The appellant could only succeed by showing that there had been such a part performance of the contract on the part of those under whom it claims as to entitle it to come into a court of equity and demand its specific execution.

The court thought otherwise, for reasons set forth in the opinion, which are still deemed sufficient, and the petition to rehear is therefore denied.

*Affirmed.*
*Rehearing  Denied.*