## LANGDON *v.* SHERWOOD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

Submitted December 12, 1887. — Decided January 9, 1888.

Section 429 of the Code of Nebraska, which provides that when a judgment or decree shall be rendered in any court of that State for a conveyance of real estate, and the party against whom it is rendered does not comply therewith within the time therein named, the judgment or decree "shall have the same operation and effect, and be as available, as if the conveyance" "had been executed conformably to such judgment or decree" is a valid act; and such a decree or judgment, rendered in the Circuit Court of the United States respecting real estate in Nebraska operates to transfer title to the real estate which is the subject of the judgment or decree, upon the failure of the party ordered to convey to comply with the order.

An action of ejectment cannot be maintained in the courts of the United States for the possession of land within the State of Nebraska on an entry made with a register and receiver, notwithstanding the provision in

§ 411 of the Code of Civil Procedure of that State, that " the usual duplicate receipt of the receiver of any land office . . . is proof of title equivalent to a patent, against all but the holder of an actual patent."

AT LAW: in the nature of ejectment. The land was in Nebraska. As to one part of the tract the plaintiff relied upon the decree of a court of competent jurisdiction for the conveyance of the land to his privy in estate, claiming that under the operation of § 429 of the Code of Nebraska, set forth in the opinion of the court, *infra*, the decree operated as a conveyance. As to the remainder, he relied upon a certificate of the register of the land office at Omaha, claiming that under the provision of § 411 of the Civil Code of Nebraska, also set forth *infra*, that was evidence of a legal title. Judgment for the plaintiff. Defendants sued out this writ of error.

*Mr. J. M. Woolworth,* for plaintiffs in error, as to the first point contended as follows:

The decree of the Circuit Court for Nebraska was incompetent to show title in the plaintiff below, and the court erred in receiving in evidence the decree and the bill upon which it was rendered, and taking cognizance thereof in its finding and judgment.

The reason for the rule violated by the judge in receiving these papers in evidence, is the principle, well settled in this court, that evidence of an equitable title is inadmissible in an action of ejectment.

So this court decided in the *Lessee of Hickey* v. *Stewart,* 3 How. 750. The action was ejectment. The plaintiffs showed a patent to James Mather, and that they were his heirs. The defendants traced title to themselves from the heirs of Robert Starke. They were permitted to read in evidence the record of proceedings in a suit in chancery, in the Supreme Court of the State of Mississippi, in which the heirs of Starke were plaintiffs and the heirs of Mather were defendants. This record contained a decree finding "that the title of the defendant was obtained by fraud and force and violence against the equity of the complainants' ancestor. . . . It was therefore ordered, adjudged and decreed that the title of defendants

to said tract of land be and the same is hereby declared to be fraudulent and void as against the complainants," and that the defendants shall deliver to the complainants the full, peaceable and actual possession of said lands, (see argument of Henderson, page 752,) and "convey the land to the complainants" and "awarded the writ of *habere facias*, 'which writ the court of chancery was authorized to order by a statute of the State.'" (See opinion, page 759.) Under this writ the defendants were placed in possession.

Mr. Justice McKinley, speaking of the effect of the decree upon the legal title, says on page 759 : "The court by its decree established the right of the. complainants to the land in controversy, and ordered Mather's heirs, who were all non-residents of the State of Mississippi, to convey the land to the complainants, and to deliver to them the possession, and awarded the writ of *habere facias;* which writ the court of chancery is authorized to order by a statute of the State. Without the aid of this writ the court could not have put the complainants into possession, the defendants being out of their jurisdiction; nor could they, for the same reason, compel a conveyance to the title to the land. The decree is, therefore, if not otherwise valid, nothing more than an equitable right, ascertained by the judgment and decree of a court of chancery; and until executed by a conveyance of the legal title, according to the decree, Starke's heirs and those claiming under them have nothing but an equitable title to the land in controversy."

The defendant in error seeks to escape the rule laid down in the above case by citing § 429 (*b*) of the Code, (Compiled Statutes, ed. 1885, 683,) which is as follows: "When any judgment or decree shall be rendered for a conveyance, release or acquittance in any court of this State, and the party or parties against whom the judgment or decree shall be rendered do not comply therewith within the time mentioned in said judgment or decree, such judgment or decree shall have the same operation and effect, and be as available, as if the conveyance, release or acquittance had been executed conformable to such judgment or decree."

But this section does not give to a decree the effect of a conveyance of the legal title. It does not say that it shall operate as a conveyance or be available as a conveyance, but only that its operation and effect shall be preserved, although a conveyance be not made. The language is, " it shall have the same operation and effect and be as available as if the conveyance " had been executed. Its object was to preserve in force the judgment or decree, notwithstanding the failure to make the deed, and thus preserve it, although the decree would otherwise by lapse of time become dormant.

The contention of the defendant in error would have some foundation if the language were, that the decree should operate as a deed to transfer the legal title from the party against whom it was made to the party in whose favor it was made. But that was not within the contemplation of the legislature. It did not mean to give the decree such effect. All that the statute provides is, that the decree shall be in force and effect after the expiration of the time limited for the making of the deed.

The statute, therefore, does not take the case out of the rule, that a decree in equity directing the defendant therein to execute a deed, establishes only an equitable title, which will not support an ejectment.

*Mr. John M. Thurston,* for defendant in error, on the second point contended as follows:

On the trial it was supposed by counsel, and was held by the court, that § 411, of the Nebraska Code of Civil Procedure, was sufficient to authorize the receipt of those certificates in evidence to show a *prima facie* title in the plaintiff. That section is as follows: " The usual duplicate receipt of the receiver of any land office, or, if that be lost or destroyed, or beyond the reach of the party, the certificate of such receiver, that the books of his office show the sale of a tract of land to a certain individual, is proof of title equivalent to a patent against all but the holder of an actual patent."

The case of *Bagnell* v. *Broderick,* 13 Pet. 436, cited by the

plaintiffs in error, does not, it seems to me, support the claim urged by opposing counsel. The holding in that case is that a certificate of the land office cannot be used to maintain title in ejectment against an adverse claim under a patent ; and the court in that case says : "Nor do we doubt the power of the state to pass laws authorizing purchasers of land from the United States to prosecute actions of ejectment against trespassers on the land purchased." Is not this such a case ?

I am aware of the fact that the decision in *Hooper* v. *Scheimer*, 23 How. 235, tends to support the claim of counsel for plaintiffs in error. It seems to hold that the title, shown by the production of the land office certificate, is only equitable, and will not support an action in ejectment. But in all cases cited, the parties holding the land office certificate, were seeking to defeat patents subsequently issued, or at least were attempting to oust from possession those claiming under some adverse legal title.

I do not challenge the correctness of the holdings of this court upon this question, but I may be permitted to suggest that the rule laid down in *Bagnell* v. *Broderick* goes far enough, and it should not be enforced in favor of mere naked possession.

However, I do not apprehend that the judgment in this case would be reversed *in toto* because of a failure of proof of title to a small portion of land in controversy.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the District of Nebraska.

The defendant in error brought in that court a suit in the nature of an action of ejectment to recover several tracts or parcels of land then in the possession of the plaintiffs in error. The case was first tried before a jury, and the verdict afterwards set aside. By a written agreement of the parties, it was then submitted to the court without a jury. That court made a general finding in favor of the plaintiff, Sherwood, and certain special findings, and upon both of these rendered a judg-

ment for him, for all the land claimed in his petition. A bill of exceptions was taken, which related to the introduction of evidence and the findings of the court. On this bill of exceptions and the special findings of fact the plaintiffs here assign two principal errors.

The first one of these, which affects all the land embraced in the suit, has reference to the introduction and effect of a decree in chancery, rendered in the Circuit Court of the United States for the District of Nebraska, April 9, 1883, in which Sherwood was complainant and the Sauntee Land and Ferry Company was defendant. The plaintiff in the action of ejectment, having given evidence which he asserted showed title to all the land in controversy in the Sauntee Land and Ferry Company, introduced the record of this suit in chancery to establish a transfer of the title by means of the proceedings in that suit from that company to himself. The bill of complaint set out that this company, while owner of the land, had made a verbal agreement with William A. Gwyer that the latter should take, have, and hold the real estate mentioned, as his own property, and as consideration for the same should pay off, settle, and discharge the indebtedness of the company.

The decree of the court established the fact that Sherwood had acquired the interest of Gwyer in the property, whereby he became the equitable owner of it all, and that he was entitled to have a conveyance of the legal title from the Sauntee Land and Ferry Company. The decree then proceeded in the following language:

"It is further ordered and decreed that the respondent, the Sauntee Land and Ferry Company, shall, within twenty days after the entry of this decree, execute, acknowledge, prove, and record, in the manner provided by law, a good and sufficient deed of conveyance to the complainant of all said real estate, to vest the entire legal title thereof in the respondent, and to deliver said deed of conveyance so executed, acknowledged, proved, and recorded to the complainant.

"It is further ordered and decreed that in case said respondent shall fail, neglect, or refuse to make, execute, acknowledge, prove, record, and deliver to the complainant such deed of

conveyance within the time hereinbefore fixed, then, and in that case, this decree shall stand and be a good, sufficient, and complete conveyance from the respondent, the Sauntee Land and Ferry Company, to the complainant, Willis M. Sherwood, of all the right, title, and estate of said respondent in and to said real estate, and shall be taken and held as good, complete, and perfect a deed of conveyance as would be the deed of conveyance hereinbefore specified. And that the respondent, and all persons claiming through, from, or under it, be, and they are hereby, perpetually barred, restrained, and enjoined from asserting any right, title, ownership, or interest in or to said real estate adversely to the complainant, and from in any manner interfering with the peaceable and quiet possession of complainant in and of the same."

No conveyance was ever made under this decree by that company, and it is objected that for this reason Sherwood did not acquire by that proceeding the strict legal title, but only obtained an equitable one, and the quieting of that title as against the Sauntee Land and Ferry Company. Section 429 of the Code of Nebraska is, however, relied upon by Sherwood's counsel as giving to the decree in his favor in the chancery suit the effect of an actual conveyance of the title. That section is as follows :

" When any judgment or decree shall be rendered for a conveyance, release, or acquittance in any court of this State, and the party or parties against whom the judgment or decree shall be rendered do not comply therewith within the time mentioned in said judgment or decree, such judgment or decree shall have the same operation and effect, and be as available, as if the conveyance, release, or acquittance had been executed conformable to such judgment or decree."

We are of opinion that if this section of the code be valid, it was the intention of the makers of it that a judgment and decree, such as the one before us, should have the same effect, where the parties directed to make the conveyance fail to comply with the order, as it would have had if they had complied, in regard to the transfer of title from them to the party to whom they were bound to convey by the decree. The

language of this section of the code hardly admits of any other construction. When the party decreed to make the conveyance does not comply therewith within the time mentioned in the judgment or decree, such judgment or decree shall have the same effect and operation and be as available as if the conveyance had been executed. The operation or effect here meant was the transfer of title, and it could not have been made any clearer if it had said that it should have the effect of transferring the title from the party who fails to convey to the one to whom it ought to be conveyed. This must have been the meaning in the minds of the legislators.

It was undoubtedly the ancient and usual course in such a proceeding to compel the party who should convey to perform the decree of the court by fine and imprisonment for refusing to do so. But inasmuch as this was a troublesome and expensive mode of compelling the transfer, and the party might not be within reach of the process of the court so that he could be attached, it has long been the practice of many of the States, under statutes enacted for that purpose, to attain this object, either by the appointment of a special commissioner who should convey in the name of the party ordered to convey, or by statutes similar to the one under consideration by which the judgment or decree of the court was made to stand as such conveyance on the failure of the party ordered to convey.

The validity of these statutes has never been questioned, so far as we know, though long in existence in nearly all the States of the Union. There can be no doubt of their efficacy in transferring the title, in the courts of the States which have enacted them, nor do we see any reason why the courts of the United States may not use this mode of effecting that which is clearly within their power.

The question of the mode of transferring real estate is one peculiarly within the jurisdiction of the legislative power of the State in which the land lies. As this court has repeatedly said, the mode of conveyance is subject to the control of the legislature of the State; and as the case in hand goes upon the proposition that the title had passed from the government

of the United States and was in controversy between private citizens, there can be no valid objection to this mode of enforcing the contract for conveyance between them according to the law of Nebraska. *United States* v. *Crosby*, 7 Cranch, 115; *Clark* v. *Graham*, 6 Wheat. 577; *McCormick* v. *Sullivant*, 10 Wheat. 192; *United States* v. *Fox*, 94 U. S. 315; *Brine* v. *Insurance Co.*, 96 U. S. 627; *Connecticut Ins. Co.* v. *Cushman*, 108 U. S. 51. We cannot see, therefore, any error in the Circuit Court in permitting the proceedings in the chancery suit to be given in evidence, nor in giving to them the effect of transferring from the Sauntee Land and Ferry Company such legal title as it had to any of the property in controversy.

The plaintiff, in order to sustain his right of action in this suit, offered in evidence, first, a certificate of the register of the land office at Omaha, Nebraska, of the date of August 14th, 1857, of the location by John Joseph Wright of a military land warrant upon the southwest quarter of the southwest quarter of section twenty-eight, and the west half of the northwest quarter of section thirty-three, in township thirteen North of Range ten East, containing one hundred and twenty acres. He also offered the assignment of this land and the certificate to the Sauntee Land and Ferry Company. Another certificate of the receiver at Omaha, of the same date, was also offered, acknowledging the payment of $45.50 for the purchase of lot number one of quarter section number thirty-three, in Township number thirteen North of Range ten East, containing thirty-six acres and forty-hundredths, and an assignment thereof to the same company.

To both of these certificates and assignments the defendants objected, on the ground that they were immaterial, and did not purport to be a conveyance of said lands, and that title could not be shown in this action of ejectment by a certificate of a register or receiver. In its findings, the court, upon this subject, finds specially, that by virtue of these certificates "the said Wright became seized in fee of the said lands, and that by his deed of conveyance thereof the same passed to the Sauntee Land and Ferry Company."

It has been repeatedly decided by this court, that such certificates of the officers of the land department do not convey the legal title of the land to the holder of the certificate, but that they only evidence an equitable title, which may afterwards be perfected by the issue of a patent, and that in the courts of the United States such certificates are not sufficient to authorize a recovery in an action of ejectment. The ground of these decisions is, that in these courts, a recovery in ejectment can only be had upon the strict legal title; that this class of certificates presupposes the existence of the title in the United States at the time they were given; and that something more is necessary to show that this legal title was ever divested from the United States by a patent or otherwise. The decisions on this subject are quite numerous, and the principle on which they rest has been frequently asserted and maintained with uniformity.

In the case of *Bagnell* v. *Broderick*, 13 Pet. 436, 450, this question was very fully considered, and the language of the court, expressive of the result arrived at, is, that "Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the Federal Government, in reference to the public lands, declares the patent the superior and conclusive evidence of legal title; until its issuance the fee is in the government, which, by the patent, passes to the grantee; and he is entitled to recover the possession in ejectment."

*Fenn* v. *Holmes*, 21 How. 481, 483, was also a case of this character, and in that the court said: "This is an attempt to assert at law; and by a legal remedy, a right to real property — an action of ejectment to establish the right of possession in land. That the plaintiff in ejectment must in all cases prove a *legal* title to the premises in himself, at the time of the demise laid in the declaration, and that evidence of an *equitable* estate will not be sufficient for a recovery, are principles so elementary and so familiar to the profession as to render unnecessary the citation of authority in support of them."

The case of *Hooper* v. *Scheimer*, 23 How. 235, was an action of ejectment in the Circuit Court of the United States for the

Eastern District of Arkansas. The plaintiff endeavored to maintain his right to recover possession by the production of an entry made in the United States Land Office. A statute of Arkansas enacted that an action of ejectment may be maintained where the plaintiff claims possession by virtue of an entry made with the register or receiver of the proper Land Office. This court, however, after referring to the case of *Bagnell* v. *Broderick*, and declaring that its principles are the settled doctrine of the court, adds: "But there is another question standing in advance of the foregoing, to wit: Can an action of ejectment be maintained in the Federal courts against a defendant in possession, on an entry made with the register and receiver?" To which question it responds by saying: "It is also the settled doctrine of this court, that no action of ejectment will lie on such an equitable title, notwithstanding a state legislature may have provided otherwise by statute. The law is only binding on the state courts, and has no force in the Circuit Courts of the Union." See also *Foster* v. *Mora*, 98 U. S. 425, for an assertion of the same principle.

The defendants in error rely upon § 411 of the Nebraska Code of Civil Procedure, which is analogous in its provisions to the statute of Arkansas referred to in the case of *Hooper* v. *Scheimer*. That section is as follows: "The usual duplicate receipt of the receiver of any land office, or, if that be lost or destroyed, or beyond the reach of the party, the certificate of such receiver, that the books of his office show the sale of a tract of land to a certain individual, is proof of title equivalent to a patent, against all but the holder of an actual patent." But, whatever effect may be given to this statute in the courts of the State of Nebraska, it is obvious that, in the Circuit Court of the United States, it cannot be received as establishing the legal title in the holder of such certificate. Where the question is one of a derivation of title from the United States, it is plain that this class of evidence implies that the title remains in the United States. The certificate is given for the purpose of vesting in the receiver of it an equitable right to demand the patent of the government after such further proceedings as the laws of the United States and the course of business in the departments may require.

The Circuit Court cannot presume that a patent has been issued to the party to whom such certificate was issued, or to any one to whom he may have transferred it. The fact of the issue of a patent is a matter of record in the Land Department of the United States, and a copy of that record may be so easily obtained by application at the proper office, that no necessity exists for the acceptance in an action at law of the receipt of a register or receiver as a substitute for the patent. If it never issued it is obvious that the legal title remains in the United States, and, according to the well-settled principles of the action of ejectment, the plaintiff cannot be entitled to recover in the action at law.

To receive this evidence, and to give to it the effect of proving a legal title in the holder of such a receipt, because the statute of the State proposes to give to it such an effect, is to violate the principle asserted in *Bagnell* v. *Broderick*, that it is for the United States to fix the dignity and character of the evidences of title which issue from the government. And it is also in violation of the other principle settled by the cited decisions, that in the courts of the United States a recovery in ejectment can be had alone upon the strict legal title, and that the courts of law do not enforce in that manner the equitable title evidenced by these certificates.

There was error, therefore, in the decision of the court admitting these certificates from the land office as evidence of title, and in the finding that there was such evidence of title in the plaintiff as justified the recovery. The judgment of the court on the facts found in regard to the remainder of the land is correct. It must, however, be reversed for the error in regard to the one hundred and fifty-six acres and forty-hundredths included in the two certificates of the land office. It is, therefore,

*Remanded, with instructions to render judgment against the plaintiff for the one hundred and fifty-six acres and forty-hundredths, and in his favor for the remainder of the land.*