CONSOLIDATED INTERSTATE CALLAHAN MINING CO. v. CALLAHAN MINING CO. et al.

(District Court, D. Idaho, N. D.　October 9, 1915.)

No. 628.

1. CORPORATIONS ⬩⟲398—WHO MAY REPRESENT—DISPUTED ELECTION OF DI-RECTORS.

   Directors of a corporation, whose election was duly certified and who are in actual control of its affairs, although the validity of their election is disputed, must, until the question has been adjudicated by a competent tribunal, be recognized as its directors for the purposes of a removal of a suit brought against it in a state court.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1592–1594; Dec. Dig. ⬩⟲398.]

2. REMOVAL OF CAUSES ⬩⟲42—ACTIONS REMOVABLE—LOCAL SUITS.

   A suit in a state court by stockholders against a foreign mining corporation, whose property is situated within the state and federal district, in which plaintiffs allege the invalidity of the election of the acting directors and seek to take the property out of their control through the appointing of a receiver, and which is in effect one to determine rights between rival groups of stockholders, is a suit to enforce a claim to property, of which the federal court is given jurisdiction by Judicial Code (Act March 3, 1911, c. 231) § 57, 36 Stat. 1102 (Comp. St. 1913, § 1039), where the other jurisdictional facts are present, and is removable by the defendant corporation.

   [Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § .85; Dec. Dig. ⬩⟲42.]

Ancillary proceeding for an injunction by the Consolidated Interstate Callahan Mining Company against the Callahan Mining Company and others. Petition granted.

---

⬩⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John H. Wourms, of Boise, Idaho, Joseph McCarthy, of Spokane, Wash., Cotton, Neukom & Colton, of Duluth, Minn., and Graves, Kizer & Graves, of Spokane, Wash., for plaintiff.

M. A. Folsom, of Spokane, Wash., John P. Gray, of Cœur d'Alene, Idaho, and James E. Gyde, of Wallace, Idaho, for defendants.

DIETRICH, District Judge. This is an ancillary proceeding, brought by the petitioner, hereinafter called the Mining Company, to restrain the defendants from further prosecuting a suit in the state court against the petitioner, upon the ground that the court has lost jurisdiction of the cause by reason of its removal to this court. The petition for removal was filed by the Mining Company, named as the defendant in that suit, together with numerous individuals constituting two rival groups of stockholders, each claiming to be the regularly elected board of directors. In Traction Company v. Mining Company, 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462, and Donovan v. Wells Fargo & Co., 169 Fed. 363, 94 C. C. A. 609, 22 L. R. A. (N. S.) 1250, may be found a statement of the general principles under which the issue is to be adjudged. They are so well settled that it is unnecessary to discuss them here.

In the principal suit, which was brought by two stockholders of the Mining Company, it is shown that there is a question whether certain of the individual defendants therein named were elected directors of the company at an election held in Duluth, Minn., on the 16th day of August, 1915, or whether the other individual defendants were so elected. The election of one group was certified by the inspectors of election, and it is this group which is in control of the machinery and property of the corporation, and has possession of its records and seal. The plaintiffs, espousing the cause of the other group, set forth that those in control are either interested in, or are unduly friendly with, another corporation, the Metals Company; that they secured their election by unlawful means, and that, because of the election controversy and the impending struggle for possession and control, the corporate business, which involves the operation of a large and profitable zinc mine, will suffer irreparable injury, unless the court takes possession through a receiver. The prayer is that a receiver be appointed to take over and manage the entire business until the result of the election can be determined by a competent tribunal, and that thereupon the property and records be turned over to those who shall be held to have been duly elected. There is also a prayer that the result of the election be determined by the court in which the action was brought.

The Mining Company was organized under, and exists by virtue of, the laws of the state of Arizona. The election in question was, as already stated, held in Minnesota. None of the directors certified by the inspectors reside in Idaho, and no one of them has been served with process or has appeared in the suit. The other group, assuming to act upon behalf of the Mining Company, procured counsel to enter its appearance and to co-operate with the plaintiffs in securing the appointment of a receiver, and forthwith a receiver was appointed, without notice to the remaining individual defendants. Thereupon the di-

rectors, whose election had been certified, and who are in fact in control of the corporate business, caused the Mining Company to petition for the removal of the suit to this court, upon the ground that the complaint presents a separable controversy between it and the plaintiffs. Upon that assumption there doubtless exist the requisite diversity of citizenship and jurisdictional amount in dispute. Only one of the plaintiffs, however, is a resident of this district, and, as we have already seen, the Mining Company is a nonresident, and therefore, under the rule of Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635, Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264, and In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164, it is conceded that the cause is not removable to this court over the objection of the nonresident plaintiff, unless it falls within one of the provisions of section 57 of the Judicial Code; that is, unless it is a suit "to enforce * * * claim to * * * real or personal property within" this district. And counsel apparently agree that this is the principal, if not the only real, question for discussion.

[1] True, it is suggested in the brief for the respondents that the Mining Company, having appeared, as we have already explained, and joined in the petition for a receiver, thus submitted itself to the jurisdiction of the state court, and therefore its petition for removal came too late. The point was not seriously pressed at the argument, and it may be summarily disposed of. For present purposes the allegations of the petition for removal must, under familiar principles, be deemed to be true, and upon the showing therein made the appearance was unauthorized. Until otherwise determined by a competent tribunal, the directors whose election was certified in due form, and who are in the actual control of the company's affairs, must be recognized as its directors. Their election may be voidable, but it was not void, and the question cannot be adjudicated upon a petition for removal. Hence for the time being the presumption of the regularity of the certificate of election must be deemed to be conclusive. Beard v. Beard, 66 Or. 512, 133 Pac. 797, 134 Pac. 1196.

[2] Turning now to the real question, does the issue between the plaintiff and the defendant company involve a "claim" to real or personal property, within the meaning of the statutory provision quoted? It will be borne in mind that the primary purpose of the statute was to enable federal courts to acquire jurisdiction of the persons of nonresident parties whose presence might be necessary to an adjudication of local actions touching the status of property within the district, in cases depending for federal jurisdiction upon diversity of citizenship. By implication it has been held to create an exception to the statutory rule, applicable to this general class of cases, requiring that they be brought in the district of the residence of one of the parties. Now, when we consider its primary purpose and the comprehensive terms in which it is couched, I am inclined to think it should receive a liberal construction, with a view to giving effect to the legislative intent. Otherwise, a party having a local cause of action clearly falling within federal jurisdiction could not prosecute it in a federal court, for

the reason that he could not bring his adversary into the only court having jurisdiction of the subject-matter. Logically it follows that in considering its secondary purpose it must have the same construction. It is as broad for one purpose as it is for the other. In every case where it authorizes the constructive service of process it necessarily operates to create an exception to the general rule of the venue of actions. If, therefore, the issue between the plaintiffs and the defendant affects real or personal property within this district, and involves the status thereof in such a manner that, if the defendant could not be found in the district, it could be proceeded against upon constructive service, then the objection to the venue is without merit.

A search of the books has discovered no decided case which impresses me as being controlling, or even highly persuasive. With a measure of confidence the petitioner cites Schultz v. Diehl, 217 U. S. 594, 30 Sup. Ct. 694, 54 L. Ed. 896, Schultz v. Gold Mines Co. (C. C.) 158 Fed. 337, East Tennessee Co. v. Atlanta Co. (C. C.) 49 Fed. 608, 15 L. R. A. 109, State National Bank v. Syndicate Co. (C. C.) 178 Fed. 360, Brown v. Pegram (C. C.) 143 Fed. 701, Texas Co. v. Oil Co., 194 Fed. 1, 114 C. C. A. 21, and Jewett v. Trust Co. (C. C.) 45 Fed. 801. And the respondents cite Ladew v. Tennessee Copper Co., 218 U. S. 357, 31 Sup. Ct. 81, 54 L. Ed. 1069, Jones v. Gould (C. C.) 149 Fed. 153, and Central Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286, 38 L. Ed. 98. But, as I read these cases, they are all easily distinguishable in their facts.

If we now pass to an analysis of the complaint in the state court, what do we find? The Mining Company holds the legal title to, and has possession, and presumptively is entitled to continue in the possession and control, of a valuable mine in this district, which, it may be added, constitutes substantially all of the corporate assets. This property it holds for the use and benefit of its creditors and stockholders, but, subject to the obligations of this trust, it is vested with full proprietary power; neither creditors nor stockholders have the right to infringe upon its exclusive possession. The plaintiffs, as stockholders, have an equitable interest in, or claim to, the property, which, by this suit, they seek to protect against what they conceive to be an impending danger arising out of the alleged inability or incompetency of the corporation to discharge the duties of its trust. They do not sue upon behalf of the corporation or all other stockholders, but they bring the action in their own right, and thereby seek to change the status of the property. They would wrest it from its present possession and control, where the majority of the stockholders have chosen to put it, and place the management thereof in other hands. It is as if the beneficial ownership of real estate, the title to which, and the right to its management and control, were vested in a trustee for certain purposes, came into court alleging the incompetency of the trustee and prayed for his discharge and the appointment of another in his place.

The interests of the corporation are adverse to those of the plaintiffs. The issue between them involves the status of property within this district. The corporation claims the right to remain in the possession and control, and this claim the plaintiffs directly challenge.

To be sure, the source and nature of the plaintiffs' interests in the property are probably not in issue; but that fact is not controlling. Upon the basis of their conceded interest they predicate a claim which is *not* conceded, namely, the claim that they have a right to take the property out of the defendant's hands. And that is a claim to property in the district, which by the suit they are attempting to enforce. The effect which the granting of the relief prayed for would have upon the defendant's relation to the property cannot be ignored. The plaintiffs would take the property from the corporation as now organized for an indefinite length of time, place it in the hands of a receiver, and ultimately turn it over to the corporation differently organized. The remedies of mandamus, replevin, and ejectment could not effect a more complete change of possession than that here sought. It is true the plaintiffs' theory of the nature of the action is not entirely clear, and in a possible view which may be taken the receivership can be regarded as furnishing only a provisional remedy. But it is conceded to be doubtful whether the state court has the power to inquire into or determine the controversy between the contending groups of directors, and therefore one branch of the prayer is that the property be kept in the custody of a receiver until that issue can be adjudicated by *some competent* tribunal. Having regard only for that branch of the relief sought, the ultimate, and indeed the sole, purpose of the suit would be to oust the defendant of possession. Change of possession through the receivership would not be merely a provisional remedy, for such change would be the ultimate, as well as the intermediate, purpose and effect of the suit; and in considering the jurisdictional aspect of a suit the maximum relief prayed for, and not the minimum, is to be taken as the criterion.

But if we take the most favorable view to the plaintiffs which they have suggested, we have only the proposition that a court of equity having jurisdiction upon some other ground may *incidentally* determine the validity or result of an election. In that view it would follow that this proceeding can be maintained in the state court only because it affects the status of property situate within the territorial jurisdiction of that court. In other words, proceeding upon its ordinary jurisdiction to protect and safeguard trust property in the state, or in the district, the state court or this court may incidentally pass upon the validity of a corporate election. I do not understand that counsel for the respondents contend that either court can exercise primary jurisdiction over the election controversy. There must be some other issue of equitable cognizance to which this is a mere incident. The Mining Company was not organized in this state, but is a foreign corporation; the election was not had here, and no meetings are held or records kept here. Few, if any, of the directors or other officers reside here. Now, if we were to add to these conditions the further one that the corporation holds no property here, would any one assert that the courts of or in the state would have jurisdiction in an independent suit in equity to determine a controversy between contending groups of persons, each claiming to be the duly elected board of directors? If under such conditions such an action could not be maintained, then,

whether the receivership be the ultimate, or only a temporary, object of the suit, jurisdiction either in the state court or in this court rests primarily upon the fact that the status of property located within the territorial jurisdiction of the court is involved, and that the action exhibits a controversy over, or a claim to, such property.

Notwithstanding my first impression to the contrary, and a natural reluctance to adopt a view out of harmony with that of the state court, upon reflection the conviction has grown upon me that the issue between the plaintiffs and the defendant company involves a claim to property in the district, and that therefore the objection to the venue is not well taken, and a restraining order should issue as prayed for. The question is not free from great perplexity, and if there are considerations which, to the respondents, may seem to have been overlooked by me, they may be urged upon a motion to remand.

I have not the benefit of counsel's views touching the amount of the bond which should reasonably be required. I therefore fix it at $10,000, reserving the right upon a showing, either formal or informal, to increase it at any time.

Perhaps it should be added that I have not been able to see the pertinency of those portions of the complaint in which it is charged that the Metals Company has exercised an undue influence over the directors of the Mining Company. It is alleged that certain contracts entered into were, from the standpoint of the Mining Company, improvident, if not fraudulent, but no relief is sought upon this head. The Metals Company is not made a party, and besides the plaintiffs pray that the receiver to be appointed be directed to abide by and perform the company's contracts.