Josephine S. BUZZELL, Executrix of the Estate of Reginald W. Buzzell, and Josephine S. Buzzell

v.

EDWARD H. EVERETT CO.

Civ. A. No. 2647.

United States District Court
D. Vermont.

Jan. 14, 1960.

Gannett & Oakes, Brattleboro, Vt., for plaintiffs.

Edwin W. Lawrence, Donald M. French, Rutland, Vt., for defendant.

GIBSON, District Judge.

### Statement of the Case

This case originated as an *in personam* suit brought by Reginald W. Buzzell and Josephine S. Buzzell, citizens and residents of Vermont, against The Edward H. Everett Company, an Ohio corporation. The complaint was dated November 18, 1958, and indicated that the plaintiffs thought they were entitled to a quitclaim deed from the defendant of a tract of land located in Bennington, Vermont. That tract of land will be referred to hereafter as Buzzell II. The plaintiffs demanded by way of relief, inter alia, "* * * that the defendant be ordered to execute and deliver to plaintiffs a quitclaim deed in proper Vermont form, releasing and quitclaiming all of defendant's right, title and interest in and to said land and premises. * * *"

This Court has jurisdiction of the subject matter because there is diversity of citizenship between the plaintiffs and defendant and the amount in controversy is in excess of the jurisdictional amount.

Service of process on the person of the defendant was attempted pursuant to Rule 4(d) (7) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and 12 V.S.A. §§ 855, 856. 12 V.S.A. § 855 commences:

"If a foreign corporation makes a contract with a resident of Vermont to be performed in whole or in part by either party in Vermont, or if such foreign corporation commits a tort in whole or in part in Vermont against a resident of Vermont, such acts shall be deemed to be doing business in Vermont by such foreign corporation and shall be deemed equivalent to the appointment by such foreign corporation of the secretary of the state of Vermont and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against such foreign corporation arising from or growing out of such contract or tort."

12 V.S.A. § 856 begins with the procedure employed in this case for personal service:

"Service of process by virtue of this section and Section 855 of this title shall be made by delivering to the secretary of state duplicate copies of such process, with the officer's return of service thereon, and a fee of $1.00. The secretary shall forthwith forward one of the duplicate copies by registered mail prepaid to such corporation at its principal place of business in the state or country where it is incorporated, which principal place of business shall be stated in such process."

On December 17, 1958, the defendant moved "that the service and return of service of the summons and complaint be quashed" on the ground that the defendant had not committed a tort in whole or in part in Vermont against a resident of Vermont, so that 12 V.S.A. §§ 855, 856 were inapplicable. Presumably the defendant was raising the defense of insufficiency of service of process under Rule 12(b).

Apparently anticipating that the Court might grant the motion, the plaintiffs promptly petitioned the Court to order the defendant to appear or plead by a certain day pursuant to 28 U.S.C.A. § 1655. The defendant's motion and plaintiffs' petition were heard together on December 30, 1958. An order pursuant to 28 U.S.C.A. § 1655 was issued January 15, 1959, and service was made on Kenneth M. Kew, Vice President of the defendant, in Newark, Ohio, on February 6, 1959. Decision was held in abeyance on defendant's motion.

"Appearing specially", the defendant then moved that the order for service under 28 U.S.C.A. § 1655 be revoked and that the service thereunder "be set aside and quashed" because 28 U.S.C.A. § 1655 applies only to actions *in rem* and this action is *in personam*. The motion was heard on April 8, 1959. 28 U.S.C.A. § 1655 does apply only to actions of an *in rem* character. Stewart v. United States, 5 Cir., 1949, 242 F.2d

**49.** It will appear in the conclusions of law that there is both an *in rem* right and an *in rem* remedy available to the plaintiffs in this case. On May 4, 1959, defendant's motion was denied.

Subject matter jurisdiction in this civil action is founded solely on diversity of citizenship, but venue is not controlled by 28 U.S.C.A. § 1391(a) because it is "otherwise provided by law". 28 U.S.C.A. § 1655 lays venue in cases brought under that provision in the judicial district where the property in dispute is located. Consolidated Interstate Callahan Mining Co. v. Callahan Mining Co., D.C. D.Idaho 1915, 228 F. 528. Buzzell II is located in the Town of Bennington in the State of Vermont.

On July 21, 1959, Josephine S. Buzzell, Executrix of the Estate of Reginald W. Buzzell, moved pursuant to Rule 25(a) that she be substituted as plaintiff in place of her husband who had died January 23, 1959. The substitution was ordered on July 22, 1959.

The defendant answered the complaint May 12, 1959, and the trial of the case on the merits was held September 22, 1959, at Windsor, Vermont, before the Court. On December 10, 1959, the Court finally sustained the defendant's defense of insufficiency of service of process on the person of the defendant. The findings of fact and conclusions of law may indicate that the defendant did commit a tort in part in Vermont. That issue is not decided. The ground for allowing the defense is that service of process pursuant to 12 V.S.A. §§ 855, 856 is not constitutional *as applied to this defendant*. The defendant is an Ohio corporation engaged in the business of oil and gas exploration, development, and production in the State of Ohio and employing about fifty people there. The sole connection of the defendant with Vermont is that it has legal title to Buzzell II and owns a strip of property on the main road in Old Bennington sufficient for three building lots. Therefore, the defendant lacks the minimum contacts with this judicial district that are necessary under traditional notions of fair play and substantial justice to support personal service. See International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. It should be noted that the general constitutionality of 12 V.S.A. §§ 855, 856 is not questioned. See Smyth v. Twin State Improvement Corp., 1951, 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193, and Wham, "An Expanding Concept: Jurisdiction over Non-Residents", 44 A.B.A.J. 422 (May, 1958).

The answer and appearance of the defendant to defend on the merits of the *in rem* claim under 28 U.S.C.A. § 1655 as well as on the merits of the *in personam* claim may have subjected the defendant to *in personam* jurisdiction. See Bede Steam Shipping Co. v. New York Trust Co., D.C.S.D.N.Y.1931, 54 F.2d 658, Campbell v. Murdock, D.C.N.D.Ohio 1950, 90 F.Supp. 297, and Anderson v. Benson, D.C.D.Neb.1953, 117 F.Supp. 765. This question is not decided. The decision is predicated solely on *in rem* jurisdiction under 28 U.S.C.A. § 1655.

### Findings of Fact

To obtain a clear understanding of the plaintiff's complaint and the defendant company's defense, one must consider the history of the defendant company and that of the man for whom it is named.

Edward H. Everett's first wife bore him three children before her death in 1917—namely, Amy, Mary, and Ann. In 1920, at the age of 69, he married Grace Burnap, then age 39. Two children resulted from this marriage—Grace and Sarah.

Edward H. Everett executed a will on August 2, 1927. He died April 28, 1929. During his lifetime he created the defendant company, and, amongst other properties, he deeded to the defendant a sizeable amount of real estate located in Bennington, Vermont—part of which is the real estate from which the plaintiffs herein seek to have an encumbrance removed. At the time of his death, Mr. Everett owned 652 shares of the defendant company, inventoried as having a value slightly in excess of $750,000.

By his will of August, 1927, his widow—now the president of defendant company—received all of this stock and one-half of the residue of his estate. He also, before his death, had given his wife and their two children real and personal property valued well over three million.

The three children by Mr. Everett's first wife contested the August, 1927, will, alleging undue influence was exerted by the second wife. The trial of this will contest was lengthy and bitter. The jury, in its verdict, disallowed the will. Upon appeal, the Vermont Supreme Court reversed and remanded the case because of the admission of certain improper evidence. For all of the above, see the opinion In re Everett's Will, 105 Vt. 291, 166 A. 827, filed May 2, 1933.

The will contest was never retried. The parties reached an agreement as to the distribution of Mr. Everett's estate. By this distribution, it is apparent the widow received one-third of the stock of the defendant company, and each of the five children split the balance of the stock. There are and were 974 shares outstanding; the widow has 324 shares and each child had 130 shares. The daughter Sarah, a child of the widow, now holds 260 shares, apparently having acquired the 130 shares originally going to her sister Grace. Thus Mrs. Everett and Sarah thoroughly control the defendant company.

Since 1950, Sarah has been the wife of Horace D. McCowan, Jr., a lawyer who practices in New York City and lives in Great Neck, Long Island.

With this past history established, we come to the real estate here in issue.

By a quitclaim deed dated December 31, 1917, Edward H. Everett conveyed to the Edward H. Everett Company, which he had founded, a portion of the real estate that he owned in Bennington, Vermont. "Parcel No. Two" of the three parcels described in the deed is indicated by the broken line on Defendant's C that the surveyor labels as the boundary of "Lot No. 2". Attached to the deed were documentary stamps in the amount of $182.50, and the consideration stated in the deed was $182,043. At the time of the conveyance and until his death, Mr. Everett was president and principal stockholder of the corporate grantee. Included in the land conveyed was the entire ten-acre tract here called Buzzell II. It is marked "McCowan to Buzzell" on Defendant's C and lies entirely within "Parcel No. Two".

At least since 1952, the distribution of ownership and the concentration of control in the Edward H. Everett Company have been as they are today. Mrs. Everett still holds 324 shares, and her daughter Sarah holds 260 shares. Sarah married Horace D. McCowan, Jr., in 1950. He is a practicing attorney in New York City and will figure prominently in these findings of fact. The directors of the corporation are Mrs. Everett, Sarah McCowan, Kenneth M. Kew and Carl W. Duncan. Mr. Kew and Mr. Duncan have no stock in the defendant company. Mrs. Everett is president of the defendant company, Mr. Kew is vice-president, and Mr. Duncan is secretary-treasurer. Mr. Kew and Mr. Duncan are subservient to Mrs. Everett.

The minority stockholders in the defendant company today are the three daughters of Mr. Everett by his first wife or their successors in interest. The following extracts from Mrs. Everett's deposition confirm that the minority stockholders exercise no control whatsoever over the conduct of the defendant company.

"Q. So that, if I am correct, from what you say, you and your daughter Sarah own a majority of the common stock, and Amy, Mary and Ann(e) are the only other stockholders in the corporation? A. Unless they may have sold theirs. I don't know.

"Q. But you aren't acquainted with the fact that they have? A. No.

"Q. Since 1952, have Amy, Mary or Ann(e) attended any of the stockholders meetings? A. No.

"Q. Have you held any stockholders meetings? A. Regularly. (At pp. 8–9.)

\* \* \* \* \* \*

"Q. Have they sent a representative from time to time, an attorney or anyone, to the meetings? A. A long while ago, once in a while, an attorney would come. (At p. 9.)

\* \* \* \* \* \*

"Q. Have you corresponded with any of them relative to the affairs of the Edward H. Everett Co. during the last six or seven years? A. No. (At p. 9.)

\* \* \* \* \* \*

"Q. Do you hold any proxies from any of these three minority stockholders, Amy, Mary or Ann(e), over the last several years? A. No. Letters have been returned. Our secretary sends out each year a notice of the meeting, and the letters have been returned.

"Q. Address unknown, or how do you mean, they have been returned? A. Address unknown.

"Q. In other words, you don't even know where these three people are? A. No." (At p. 23.)

Between Mrs. Everett and her daughter, Sarah McCowan, control of the defendant company is not shared either. Mrs. Everett had occasions to discuss this point in her deposition:

"Q. Do you consider that you do actively engage in your duties as president of the corporation? A. Oh, definitely. (At p. 18.)

\* \* \* \* \* \*

"Q. Does she (Sarah) participate in the affairs of the company, actively? A. Not actively.

"Q. Does she attend the directors meetings? A. No." (At p. 29.)

Though ownership of the defendant company is more widely distributed at this time than it was before Mr. Everett's death, control of the defendant company is concentrated exclusively in the hands of Mrs. Everett. Because Mrs. Everett completely controls the defendant company, her conduct in affairs of the Edward H. Everett Company is conduct of the defendant.

Sometime subsequent to the death of Mr. Everett, the Edward H. Everett Company began to dispose of the real property in Bennington, Vermont, that it had acquired from Mr. Everett by his quitclaim deed of 1917. In 1951, three pieces of this property located to the north of Buzzell II were disposed of. One piece was conveyed to Reginald W. Buzzell and his wife, Josephine S. Buzzell, the original plaintiffs in this action. That piece will be called Buzzell I and is marked "Buzzell" on Defendant's C. Except for the portion of the "main drive" traversing it, all of Buzzell I had been in the parcels deeded to the defendant in 1917 by Mr. Everett. Mrs. Everett personally received consideration for Buzzell I and furnished the Buzzells a personal warranty deed to the property. The defendant furnished the Buzzells a gratuitous quitclaim deed to Buzzell I, dated August 28, 1951, and executed by Mrs. Everett as agent for the Edward H. Everett Company.

The same pattern of conveyancing was employed in the transfer of the other two pieces in 1951. Mrs. Everett executed personal warranty deeds for consideration to William H. Timbie and his wife, Florence H. Timbie, and to Warren H. Moore and his wife, Nellie Moore. On September 11, 1951, for the Timbie tract, and on November 2, 1951, for the Moore tract, gratuitous quitclaim deeds were executed by Mrs. Everett as agent for the defendant company. All but 10% of the area of the Moore tract ("W. H. Moore" on Defendant's C) had been included in Mr. Everett's 1917 deed. About 60% of the Timbie tract ("W. H. Timbie" on Defendant's C) had been included in Mr. Everett's 1917 deed.

Likewise, in 1952 Mrs. Everett executed her warranty deed for certain land whose legal title was in defendant company to The Foundation of Our Lady of Holy Cross. In this instance, it appears the defendant company issued a gratui-

tous quitclaim deed to this land to Mrs. Everett personally.

Now we come to the land in controversy.

Mrs. Everett executed a personal warranty deed of Buzzell II to her son-in-law, Horace D. McCowan, Jr., on July 1, 1952. The description in the deed was corrected by a quitclaim deed from Mrs. Everett to Mr. McCowan which was dated August 16, 1955. No consideration was exchanged for either of these deeds because Mrs. Everett was intending a gift to her son-in-law.

On July 14, 1955, Mr. McCowan executed a warranty deed of Buzzell II to Reginald W. Buzzell and his wife, Josephine S. Buzzell, in return for $800 paid to and kept by him. The Buzzells were bona fide purchasers. They did not employ counsel for the transaction. Subsequently the Buzzells sold a portion of Buzzell II to Professor and Mrs. Bruce Mudgett, whose attorney for this transaction was Eugene V. Clark of Bennington, Vermont.

The three conveyances of 1951, and the one in 1952 to The Foundation of Our Lady of Holy Cross, reviewed above, established a warranty deed from Mrs. Everett personally for consideration and a gratuitous deed from the defendant company executed by Mrs. Everett in her capacity of president as the customary method by which defendant transferred pieces of the real estate that it owned in Bennington. No gratuitous quitclaim deed of Buzzell II from the defendant to Mr. McCowan, the Buzzells, or even the Mudgetts has ever been executed. The failure of the defendant to execute a gratuitous quitclaim deed of Buzzell II to Mr. McCowan contemporaneously with the deeds from Mrs. Everett was an inadvertent mistake on the part of Mrs. Everett's corporate shadow.

On July 25, 1958, Mr. Clark wrote Mr. McCowan at the address of the law firm in New York City in which Mr. McCowan is a partner. The courteous letter soliciting Mr. McCowan's advice included these observations:

"I have been examining the title to lands of General Reginald W. Buzzell of Bennington with reference to a lot he has sold to Professor and Mrs. Bruce D. Mudgett, whom I represent.

"I had originally thought that the title was clear. However, in reviewing my typewritten abstract after the closing I noticed a gap in the title. As nearly as I can tell from the Land Records, at the time Mrs. Grace Burnap Everett conveyed to you * * * a ten acre piece which you later conveyed to General Buzzell * * * Mrs. Everett did not actually have title to the land.

\* \* \* \* \* \*

"My problem is that I have been unable to find a deed back from the Everett Company to Mr. or Mrs. Everett of this particular piece. \* \* \*

"It would therefore seem to be necessary to obtain a deed from the Everett Company to General Buzzell and his wife in order to clear up his title."

Mr. McCowan replied in like spirit, stating in his letter of August 4, 1958, to Mr. Clark:

"In response to your letter of July 25, I am sorry to be unable to provide any technical assistance.

\* \* \* \* \* \*

"Mrs. Everett and I will cooperate with you and your client and so I am sure will Kenneth Kew, Vice President of E. H. Everett Co., Newark, Ohio, with whom I suggest you communicate. Please do not hesitate to let me know what I can do to assist you."

Mr. McCowan forwarded the letter from Mr. Clark to Mr. Kew at the home office of the Edward H. Everett Company in Newark, Ohio. Mr. Kew's prompt letter of August 7, 1958, stated in part:

"Your letter dated July 25 addressed to Horace D. McCowan, Jr., Esq. has been referred to our attention.

\* \* \* \* \* \*

"If required the Company could we suppose in order to clean any title doubts execute a deed to Buzzell as you have noted. We shall await further information from you."

On August 12, 1958, Mr. Clark wrote Mr. Kew directly in response. Mr. Kew wrote back on August 15, 1958:

"This letter is to instruct you to prepare the necessary deed from The Edward H. Everett Company to General Buzzell concerning the land in question to correct the situation of property conveyed by Mr. McCowan to the Buzzells in 1955.

"The deed will be signed by Mrs. Grace Burnap Everett, President, and Mr. Carl W. Duncan, Secretary of The Edward H. Everett Company. I would suggest that you forward the deed directly to Mrs. Everett, in view of the urgency \* \* \*. Then Mrs. Everett can forward same direct to Newark office for Mr. Duncan's signature. We shall forward same direct to you."

A copy of this letter was sent to Mrs. Everett and she received it.

On August 18, 1958, Mr. Clark wrote a letter to Mrs. Everett at her hotel residence in New York City, soliciting her cooperation in the execution of the enclosed quitclaim deed of Buzzell II from the defendant to the Buzzells. Mrs. Everett answered Mr. Clark in a letter dated September 11, 1958, in which she stated:

"The deed which you sent to me on August 18 has not been signed as I do not believe there is need of a corrective deed.

\* \* \* \* \* \*

"As you know \* \* \* I deeded said property to Mr. McCowan which ended my connection with same."

With admirable patience, Mr. Clark wrote Mr. McCowan on September 15, 1958, asking his further cooperation. The letter read in part:

"I would appreciate your taking this matter up with Mrs. Everett again. It will mean no additional expense to her or the company and will not, in any way, enlarge her liability or the company's liability since the deed is in the form of a quit-claim. It will also relieve you of any responsibility under your warranty to General Buzzell.

"My clients have had an architect design a home specifically for the site involved and if a correction does not take place they will have to demand their money back from the Buzzells and lose many months, if not a year or more in their plans for a new home in Bennington."

The reply from Mr. McCowan is practically self-explanatory. The entire text of the letter consisted of these two poignant sentences:

"I am sympathetic to your problem but unable to help. If you are asking my advice, it is this: see Mrs. Everett personally."

Displaying the patience of Job, Mr. Clark wrote a second letter to Mrs. Everett on September 19, 1958, carefully explaining the need for the quitclaim deed he had prepared for execution on behalf of the defendant. Mrs. Everett was adamant in her reply dated September 21, 1958. She stated, "I can add nothing further to my previous communications."

Subsequent efforts to procure a quitclaim deed of Buzzell II from the defendant were carried on by counsel for the Buzzells, who wrote Mr. Kew on October 30, 1958. Like Mr. McCowan, Mr. Kew no longer could help. His reply letter of November 4, 1958, said:

"This letter is to inform you that I am not familiar with the current situation of this matter and refer you to the President of The Edw. H. Everett Company, Mrs. E. H. Everett, and to Mr. Horace D. McCowan."

In her deposition of July 24, 1959, Mrs. Everett candidly answered a question about her control of the defendant com-

pany with regard to execution of the quitclaim deed sought by the Buzzells.

"Q. The decision as to whether or not it should give such a deed is your decision? A. Yes, I suppose it would be mine." (At p. 27.)

This Court finds that Mrs. Everett is wholly responsible for what is now the deliberate refusal of the defendant to give a quitclaim deed of Buzzell II to the plaintiffs.

The Court further finds that Mrs. Everett not only dominated the defendant company but she also completely dominated her son-in-law, Mr. McCowan, and his wife, Sarah, with regard to company affairs.

Correspondence having failed, an attorney for the Buzzells had some conferences in New York with counsel for the defendant, who was none other than Mr. McCowan. It was made clear to the counsel representing the Buzzells that the quitclaim deed might be had for the price of $10,000. For the attempt by the defendant to exact payment for the quitclaim deed, Mrs. Everett is wholly responsible. In her deposition, Mrs. Everett was somewhat evasive on this point:

"Q. None of these minority stockholders or their heirs or assigns has raised any objection whatsoever to the corporation's giving such deeds as might be necessary to clear the Buzzells' title? A. No.

"Q. May I inquire whether it was your idea that the Buzzells should pay the corporation something for obtaining a deed from it? A. Yes, I know I talked with Mr. McCowan that I thought something should be done.

"Q. Something should be paid? A. Something—a settlement should be cleared up.

\*    \*    \*    \*    \*    \*

"Q. And you authorized Mr. McCowan to negotiate on behalf of the corporation for that purpose? A. Yes." (At p. 20.)

Mrs. Everett now sees the gift of corporate property that she intended to make to her son-in-law as a potential bonanza. This Court finds that the defendant is attempting to enrich itself at the expense of the innocent Buzzells for the rectification of an inadvertent departure from its customary method of conveying corporate property.

The fundamental findings of fact may be summarized as follows: First, Edward H. Everett conveyed a substantial amount of real estate in Bennington, Vermont, to the defendant. Second, it was customary for the defendant company to quitclaim tracts of this real estate gratuitously to individual grantees when Mrs. Everett, who dominated and controlled the company, had furnished them warranty deeds. Third, the defendant inadvertently failed to give Horace D. McCowan, Jr., a gratuitous quitclaim deed to Buzzell II when Mrs. Everett gave him a warranty deed. And fourth, the corporate defendant, dominated by Mrs. Everett, is now unconscionably refusing to give Mr. McCowan's grantees, the Buzzells, a gratuitous quitclaim deed to Buzzell II.

### Conclusions of Law

Defendant's objections to the admission of evidence are overruled.

■ The legal right at stake in this case under the substantive law of Vermont is constructive trust. "It is a familiar principle in equity that a trust is implied whenever the circumstances are such that the person taking the legal estate, whether by fraud or otherwise, cannot enjoy the beneficial interest without violating the rules of honesty and fair dealing." Miller v. Belville, 1924, 98 Vt. 243, 247, 126 A. 590, 592; McGann v. Capital Savings Bank & Trust Co., 1952, 117 Vt. 179, 189, 89 A.2d 123.

■ The doctrine of constructive trust in the common law of Vermont is applicable to a potential grantor wrongfully refusing to convey, though the Vermont Supreme Court to date has only had occasion to apply it to grantees who have wrongfully procured conveyances. "The forms and varieties of these constructive trusts are practically unlimited.

* * * The broad principle of natural justice contained in this doctrine is obvious to every honest mind. It should be the policy of the law to extend rather than limit its application." Miller v. Belville, 98 Vt. at page 248, 126 A. at page 593.

▮ In this case, legal title to Buzzell II now reposes in the defendant. In view of the findings of fact, this Court holds that the defendant cannot enjoy the beneficial interest in Buzzell II without reaping an unjust enrichment and violating the rules of honesty and fair dealing. A constructive trust of the property is imposed, and the defendant is deprived of equitable title. The attempted conveyance of Buzzell II by Mr. McCowan was of a tenancy by the entirety to the late Reginald W. Buzzell and his wife, Josephine S. Buzzell. 27 V.S.A. § 2; Corinth v. Emery, 1891, 63 Vt. 505, 22 A. 618. The common law incident of survivorship prevails for tenancies by the entirety in Vermont. Kennedy v. Rutter, 1939, 110 Vt. 332, 340, 6 A.2d 17. Therefore, the constructive trust of Buzzell II is imposed for the benefit of Josephine S. Buzzell.

▮ Constructive trust is an *in rem* right for purposes of 28 U.S.C.A. § 1655. Kelleam v. Maryland Casualty Co., 10 Cir., 1940, 112 F.2d 940, 943, reversed on other grounds 1941, 312 U.S. 377, 61 S.Ct. 595, 85 L.Ed. 899; Midstate Amusement Corp. v. Rivers, D.C.E.D. Wash.1944, 54 F.Supp. 738, 741–742; Anderson v. Benson, D.C.D.Neb.1953, 117 F.Supp. 765, 769.

▮ An *in rem* remedy must now be found in the substantive law of Vermont to effectuate the constructive trust that has been imposed on the defendant. Specific performance of the transfer of legal title to Buzzell II is needed. 12 V.S.A. § 4565 provides:

"When a decree is made by a court of chancery for a conveyance, release or acquittance, and the party against whom the decree is made does not comply therewith by the time appointed, the decree shall be held to have the same effect as if the conveyance, release or acquittance had been executed agreeably to such decree."

12 V.S.A. §§ 911, 912 provide for service of process on absent defendants. 12 V. S.A. § 913 states:

"Upon such notice so given to a party at least twenty-one days before the time when he is required to appear, the same proceedings may be had, so far as to effect the title or right to the possession of goods, chattels, rights, credits, land, tenements or hereditaments in the state, as if such process or pleading had been served on a party in the state before entry."

By virtue of these statutes, specific performance of a conveyance of land may be decreed against a defendant in an action *in rem* so that specific performance has taken on an *in rem* quality under Vermont law. Single v. Scott Paper Manufacturing Co., C.C.N.D.Ohio 1893, 55 F. 553; Garfein v. McInnis, 1928, 248 N.Y. 261, 162 N.E. 73. In the latter case, the state statute provided for a conveyance by an officer of the court rather than by operation of the decree itself, but that distinction is of no significance.

▮ The final issue of law for consideration is the mode of conveyance that will be employed to specifically perform the transfer of legal title in Buzzell II from the defendant to Mrs. Buzzell. Federal courts have authority to use procedure created by state law for transferring title. Langdon v. Sherwood, 1888, 124 U.S. 74, 8 S.Ct. 429, 31 L.Ed. 344. Therefore, a decree could be issued pursuant to 12 V.S.A. § 4565. Conveyance by one of the methods allowed by Rule 70 of the Federal Rules of Civil Procedure is also permissible if it is in harmony with the state substantive law of conveyancing. Rule 70 provides in part:

"If real or personal property is within the district, the court in lieu of directing a conveyance thereof

may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law."

This provision is sufficiently close to 12 V.S.A. § 4565 to be in harmony with the state substantive law of conveyancing. The impossibility of enforcing a direction to the defendant to execute a conveyance makes it desirable to dispense with that preliminary. Therefore, a judgment decree will be issued pursuant to Rule 70 which will vest legal title to Buzzell II in Josephine S. Buzzell.

### Judgment Order

It is ordered and adjudged that The Edward H. Everett Company is hereby divested of legal title and Josephine S. Buzzell is hereby vested with legal title in fee simple to a certain piece of land in Bennington, in the County of Bennington and State of Vermont, described as follows, viz.:

"Beginning at an iron pipe in the Town of Bennington, Vermont, said pipe marking the southwest corner of lands of William H. Timbie; thence running easterly along the south line of lands of the said Timbie 279.06 feet to an iron pipe marking the southwest corner of other lands of Josephine S. Buzzell; thence running easterly in the same course along the south line of lands of Josephine S. Buzzell 273.38 feet to an iron pipe; thence turning an included angle of 63° 15′ and running southerly along lands now of The Foundation of Our Lady of Holy Cross, Inc. 137.42 feet; thence turning an included angle of 185° 51′ and running southerly along lands now of The Foundation of Our Lady of Holy Cross, Inc. 85.41 feet; thence turning an included angle of 185° 37′ and running southerly along lands now of The Foundation of Our Lady of Holy Cross, Inc. 139.69 feet; thence turning an included angle of 186° 08′ and running southerly along lands now of The Foundation of Our Lady of Holy Cross, Inc. 417.98 feet; thence turning an included angle of 174° 25′ and running southerly along lands now of The Foundation of Our Lady of Holy Cross, Inc. 173.27 feet to an iron pipe; thence turning an included angle of 97° 14′ and running westerly along lands now of The Foundation of Our Lady of Holy Cross, Inc. 250.57 feet to an iron pipe; thence turning an included angle of 94° 38′ 30″ and running northerly along lands of Fillmore Farms, Inc. 622.75 feet to a post; thence turning an included angle of 289° 26′ 30″ and running westerly along lands of the said Fillmore Farms, Inc. 465.20 feet; thence turning an included angle of 92° 15′ and running northerly along lands of the said Fillmore Farms, Inc. 280.-66 feet; thence turning an included angle of 87° 35′ and running easterly along lands of the said Fillmore Farms, Inc. 459.78 feet to the place of beginning. Containing ten acres of land be the same more or less."